**STATE v. SMITH**

[170 N.C. App. 461 (2005)]

STATE OF NORTH CAROLINA v. WILLIAM BEACH SMITH

No. COA04-587

(Filed 7 June 2005)

**Rape— second-degree—instruction—force and lack of consent implied in law—victim asleep or similarly incapacitated**

The trial court erred in a second-degree rape case by its instruction to the jury that force and lack of consent are implied in law if at the time of the vaginal intercourse the victim is sleeping or similarly incapacitated, and defendant is entitled to a new trial, because: (1) the trial court could not instruct that force and lack of consent was implied in law as the evidence regarding whether the alleged victim was asleep was contradictory; (2) the instruction was unconstitutional as it conclusively prejudged the existence of two of the elements of second-degree rape; (3) assuming arguendo that the trial court could instruct the jury on a presumption in this case, the jury was not properly instructed when the challenged instruction did not indicate that defendant could rebut the mandatory conclusive presumption and that the State still had the burden of persuasion; (4) the instruction did not let the jury know that the basic fact that the victim was asleep, unconscious, or similarly incapacitated had to be proven beyond a reasonable doubt; (5) the trial court did not explain to the jury how to use the presumption and there is a reasonable likelihood the jury understood the trial court's instruction as establishing the victim was asleep notwithstanding any evidence to the contrary; and (6) upon the introduction of rebutting evidence, the mandatory presumption disappeared and the jury could only have been given a permissive inference instruction.

Judge BRYANT dissenting.

Appeal by defendant from judgment entered 15 January 2004 by Judge Evelyn W. Hill in Wake County Superior Court. Heard in the Court of Appeals 13 January 2005.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General John G. Barnwell, for the State.*

*Bruce T. Cunningham, Jr., George Hughes, and Joseph Blount Cheshire, V, for defendant-appellant.*

**STATE v. SMITH**

[170 N.C. App. 461 (2005)]

HUNTER, Judge.

William Beach Smith ("defendant") contends the trial court unconstitutionally relieved the State of its burden to prove all elements of second degree rape beyond a reasonable doubt by instructing the jury: "Force and lack of consent are implied in law if at the time of the vaginal intercourse the victim is sleeping or similarly incapacitated." After careful review, we conclude the trial court's instruction did not comport with constitutional standards. Accordingly, defendant's conviction is reversed and we remand for a new trial.

The evidence tended to show that defendant, a pilot and flight instructor, met the alleged victim when she took several flight lessons. Defendant and the victim became friends, and then became roommates when defendant allowed the victim to live in his home during the summer of 2001 after the victim's mother would no longer allow her to live in the family residence. The victim had recently graduated from high school, and in August 2001, she moved to Illinois to attend college.

During the weekend of 20 October 2001, the victim returned home for a visit. That Saturday evening she consumed eight malt liquor beverages and a glass of Jack Daniels whiskey while at a friend's home. On the same evening, defendant was celebrating a friend's birthday with a group of at least six individuals. After patronizing a local bar, the group returned to defendant's home to eat, socialize, and go to bed. The victim was not a part of this group.

Defendant and the victim each testified differently as to what occurred between them on Saturday evening and Sunday morning. The victim testified that defendant called her cell phone several times on Saturday evening and early Sunday morning to invite her over to his home for a cookout. She drove to defendant's home, knocked on the front door, and rang the doorbell. After defendant and his friend John opened the door, the victim entered the house, talked a few minutes in the foyer, and was informed that the party was over and that everyone had gone to bed. She indicated that she was too tired to drive home, so she went upstairs to go to sleep for a few hours in defendant's room. Defendant, his friend John, and the victim all slept in defendant's bed, with the victim in the middle. The victim testified that defendant began rubbing her arm and kissing her. She told him no and informed him that she was going to sleep. She went to sleep and then awoke with defendant on top of her. John was no longer in the room. Her pants and underwear had been removed, defendant

STATE v. SMITH

[170 N.C. App. 461 (2005)]

had her hands pinned down above her head, and was having sexual intercourse with her. She told him to stop, but he continued. She then used her feet to push defendant off of her. Defendant left the room, and John returned and began touching her. She then told him to stop, he left the room, and the victim went back to sleep. She awoke at approximately 9:45 a.m. and left the residence. She testified that she had to pack and prepare to leave for the airport at 11:00 a.m. in order to return to Illinois. The victim did not inform anyone in North Carolina what had occurred; however, upon returning to her dormitory, she told two friends, sought medical treatment, and spoke to a college police officer a few days later.

Defendant testified that he did not know the victim was in town visiting from college, and that he did not call the victim several times that evening. He testified that he was celebrating a friend's birthday with a group of friends, and that the group returned to his home to cookout and sit in the hot tub. The victim called his cell phone at 4:30 a.m. and left a message. He returned her phone call approximately twenty minutes later, and told her who was at his house, but that they were getting ready to go to bed. Approximately forty minutes later, the victim called defendant and told him she was on her way over. He told her that everyone was in bed. To corroborate his testimony, defendant provided his cell phone bill which indicated he only called the victim at 4:52 a.m., and not several times. He also called two witnesses who had been with him that evening who testified that they did not call the victim from their cell phones, nor had they mentioned calling the victim as they did not know she was in town.

Defendant then testified that he did not know how she got into his home, and that he first encountered her when he got up to investigate a noise he had heard. Defendant called a witness who had been sleeping on defendant's couch downstairs that evening. This individual testified that he heard the kitchen door slam and heard someone bump into the trash can. He looked up and saw the victim in the kitchen. He watched her as she walked into the foyer and went upstairs. Defendant then testified that the victim got into his bed, and they began kissing. He indicated the kissing and touching was mutual and that the victim never went to sleep.

In a telephone conversation that the victim recorded without defendant's knowledge, defendant stated that he thought the sexual intercourse was mutual because they had been kissing and touching. He stated that she had touched him in certain places and that he decided to try and take it to another level. He indicated that because

of the mutual kissing and touching, he felt she was aware of what was occurring and was awake. Defendant was very apologetic during the conversation, and he testified that he kept apologizing because the victim was a friend and was upset about what had happened between them. However, he reiterated that he felt the sexual intercourse was mutual and consensual.

The trial court instructed the jury on the elements of second degree rape. In the portion of the instruction regarding consent, the trial court stated: "And third, that the victim did not consent and it was against her will. Force and lack of consent are implied in law if at the time of the vaginal intercourse the victim is sleeping or similarly incapacitated." Defendant was convicted of second degree rape, and was sentenced to a minimum of seventy-three and a maximum of ninety-seven months imprisonment. Defendant appeals.

Defendant contends the trial court's instruction that "[f]orce and lack of consent are implied in law if at the time of the vaginal intercourse the victim is sleeping or similarly incapacitated[]" was erroneous. This instruction was based upon the Supreme Court of North Carolina's holding in State v. Moorman, 320 N.C. 387, 358 S.E.2d 502 (1987). In Moorman, the defendant knocked on the door of his friend's dormitory room, but did not receive a response. Id. at 390, 358 S.E.2d at 504. After he heard music playing in the room, he opened the door and saw a girl lying on the bed with her face down. Id. He went up to the girl, kissed her on her neck, and engaged in sexual intercourse with her twice. Id. After they had finished, he realized the girl was not his friend. Id. The victim testified that she was asleep in her dorm room and dreamed she was engaging in sexual intercourse. Id. at 389, 358 S.E.2d at 504. She awoke to find a stranger on top of her engaging in vaginal intercourse. Id. The defendant was indicted for, inter alia, second degree rape, and the State alleged that the defendant " 'unlawfully, willfully and feloniously did ravish and carnally know [the victim] by force and . . . against her will, in violation of N.C.G.S. 14-72.3.' " Id. at 389, 358 S.E.2d at 504. The defendant argued there was a fatal variance between this indictment and the proof presented at trial because the indictment alleged he utilized force to commit the rape, and the evidence presented at trial did not establish the use of force. State v. Moorman, 82 N.C. App. 594, 596, 347 S.E.2d 857, 858 (1986), overruled by 320 N.C. 387, 358 S.E.2d 502. Rather, the evidence only indicated the victim was asleep, which indicated physical helplessness, and not force. Id. at 597, 347 S.E.2d at 859. This Court determined there was a fatal variance between the

**STATE v. SMITH**

[170 N.C. App. 461 (2005)]

indictment allegations and the proof because the indictment did not allege the victim was physically helpless. *Id.* at 598, 347 S.E.2d at 859. Specifically, this Court stated,

> we hold that the proper indictment for the rape of a person who is asleep is one alleging rape of a "physically helpless" person. In the present case, penetration and the initiation of sexual intercourse was achieved while the prosecutrix was asleep and unable to communicate an unwillingness to submit to the act. Thus, there is a fatal variance between the indictment's allegations that defendant carnally knew the prosecutrix by force and against her will and the proof the State presented at trial. The trial court should have granted the motion to dismiss the second degree rape charge, and the judgment as to that offense must be arrested.

*Id.* The Supreme Court of North Carolina reversed, and held that in the crime of rape, the elements of force and lack of consent are implied in law upon the showing of sexual intercourse with a person who was asleep, unconscious, or otherwise incapacitated and therefore unable to resist or give consent. *Moorman*, 320 N.C. at 391-92, 358 S.E.2d at 505. Thus, in *Moorman*, our Supreme Court concluded there was not a fatal variance between the indictment and the evidence offered at trial, and affirmed the defendant's conviction for second degree rape. *Id.* at 391-92, 358 S.E.2d at 505-06.

In this case, the trial court deviated from the pattern jury instructions and attempted to incorporate the holding in *Moorman* into the jury instructions. In pertinent part, the pattern jury instructions provide:

> The defendant has been charged with second degree rape.
>
> For you to find the defendant guilty of this offense, the state must prove three . . . things beyond a reasonable doubt:
>
> First, that the defendant engaged in vaginal intercourse with the victim. Vaginal intercourse is penetration, however slight, of the female sex organ by the male sex organ. (The actual emission of semen is not necessary.)
>
> Second, that the defendant used or threatened to use force sufficient to overcome any resistance the victim might make. (The force necessary to constitute rape need not be actual physical force. Fear or coercion may take the place of physical force.)

And Third, that the victim did not consent and it was against her will. (Consent induced by fear is not consent in law.)

. . .

If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant engaged in vaginal intercourse with the victim and that he did so by force or threat of force and that this was sufficient to overcome any resistance which the victim might make, and that the victim did not consent and it was against her will . . . it would be your duty to return a verdict of guilty. If you do not so find or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

1 N.C.P.I.—Crim. 207.20 (2002) (footnote omitted). After instructing on the third element, the trial court gave the following instruction based upon the holding in *Moorman*: "Force and lack of consent are implied in law if at the time of the vaginal intercourse the victim is sleeping or similarly incapacitated."

The Supreme Court of North Carolina did not discuss in *Moorman* how its holding could be properly incorporated into a jury instruction. Rather, the analysis in *Moorman* focused upon the indictment allegations and the proof required to prove the allegations. In North Carolina, there is a fatal variance between the indictment allegations and the proof where the evidence tends to show the commission of an offense not charged in the indictment. *State v. Williams*, 303 N.C. 507, 510, 279 S.E.2d 592, 594 (1981). Thus, in *Moorman*, the appellate courts were reviewing the indictment and the evidence presented, not whether the jury was properly instructed on the law regarding second degree rape. In this case, defendant argues the trial court's instruction that "[f]orce and lack of consent are implied in law if at the time of the vaginal intercourse the victim is sleeping or similarly incapacitated[,]" impermissibly shifted the burden of proof to defendant and allowed the jury to presume force and lack of consent. Defendant's argument presents an issue of first impression before our appellate courts.

First, under the facts of this case, we conclude the trial court could not instruct that force and lack of consent was implied in law as the evidence regarding whether the alleged victim was asleep was contradictory. By analogy, we consider cases involving the use of a dangerous or deadly weapon, as our appellate courts have discussed

on several occasions the propriety of instructing that a particular instrument is a dangerous or deadly weapon as a matter of law. In the context of whether an instrument is a dangerous or deadly weapon:

> It has long been the law of this state that "[w]here the alleged deadly weapon and the manner of its use *are of such character as to admit of but one conclusion, the question as to whether or not it is deadly . . . is one of law, and the Court must take the responsibility of so declaring.*"

*State v. Torain*, 316 N.C. 111, 119, 340 S.E.2d 465, 470 (1986) (quoting *State v. Smith*, 187 N.C. 469, 470, 121 S.E. 737, 737 (1924)) (emphasis added and emphasis in original). In contrast, " 'where the instrument, according to the manner of its use or the part of the body at which the blow is aimed, may or may not be likely to produce such results, its allegedly deadly character is one of fact to be determined by the jury.' " *See id.* at 120, 340 S.E.2d at 470 (quoting *State v. Joyner*, 295 N.C. 55, 64-65, 243 S.E.2d 367, 373 (1978)).

Therefore, in the case *sub judice*, if the uncontroverted facts could only lead to but one conclusion, i.e., that the alleged victim was asleep when nonconsensual sexual intercourse occurred, then the trial court could instruct that force and lack of consent was implied in law based upon our Supreme Court's decision in *State v. Moorman*. However, the facts of this case were in dispute with the alleged victim testifying she was asleep, and the defendant testifying she was awake. In the recorded phone conversation, the defendant stated that he initiated sexual contact because of the mutual kissing and touching and he decided to take "it to one other level." Defendant also stated in the recorded conversation that he thought the alleged victim was awake and fully aware of what was occurring because of how the alleged victim was touching him. The facts of this case did not lead to only one conclusion regarding whether the alleged victim was asleep, and therefore the trial court could not determine force and lack of consent as a matter of law. As the trial court's instruction conclusively prejudged the existence of two of the elements of second degree rape, the instruction was unconstitutional. *See State v. Reynolds*, 307 N.C. 184, 189, 297 S.E.2d 532, 535 (1982) (citation omitted) (stating " '[m]andatory presumptions which conclusively prejudge the existence of an elemental issue . . . violate the Due Process Clause' ").

Moreover, assuming arguendo the trial court could instruct the jury on a presumption in this case, we conclude the jury was not

properly instructed. "The threshold inquiry in ascertaining the constitutional analysis applicable to . . . [a] jury instruction is to determine the nature of the presumption it describes." *Sandstrom v. Montana*, 442 U.S. 510, 514, 61 L. Ed. 2d 39, 45 (1979). We must carefully examine the actual words spoken to the jury by the trial judge in light of whatever definition of the presumption may be provided by applicable statute or case law. *State v. White*, 300 N.C. 494, 506, 268 S.E.2d 481, 489 (1980). We also inquire

> " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the [United States] Constitution." To satisfy this "reasonable likelihood" standard, a defendant must show more than a "possibility" that the jury applied the instruction in an unconstitutional manner, but need not establish that the jury was "more likely than not" to have misapplied the instruction.

*State v. Jennings*, 333 N.C. 579, 621, 430 S.E.2d 188, 209 (1993) (quoting and discussing *Estelle v. McGuire*, 502 U.S. 62, 72-73, 116 L. Ed. 2d 385, 399 (1991) and *Boyde v. California*, 494 U.S. 370, 380, 108 L. Ed. 2d 316, 329 (1990)).

In this case, the trial court instructed:

> The Defendant has been charged with second degree rape. For you to find the Defendant guilty of this offense, the State must prove three things beyond a reasonable doubt.

> First, that the Defendant engaged in vaginal intercourse with the victim. Vaginal intercourse is penetration, however slight, of the female sex organ by the male sex organ. The actual emission of semen is not necessary.

> Second, that the Defendant used or threatened to use force sufficient to overcome any resistance the victim might make.

> And third, that the victim did not consent and it was against her will. *Force and lack of consent are implied in law if at the time of the vaginal intercourse the victim is sleeping or similarly incapacitated.*

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant engaged in vaginal intercourse with the victim and that he did so by force and that this was sufficient to overcome any resistance which the victim might make, and that the victim did not consent and it

was against her will, it would be your duty to return a verdict of guilty.

(Emphasis added.) The trial court's instruction that "[f]orce and lack of consent are implied in law if at the time of the vaginal intercourse the victim is sleeping or similarly incapacitated[,]" was a correct statement of law under the facts of *State v. Moorman*; however, the manner in which the trial court instructed the jury in this case was unconstitutional.

Although the trial court does not use the term "presume" in the instruction, we conclude the instruction was a presumption.

"A presumption, or deductive device, is a legal mechanism that allows or requires the factfinder to assume the existence of a fact when proof of other facts is shown. The fact that must be proved is called the basic fact; the fact that may or must be assumed upon proof of the basic fact is the presumed fact."

*State v. Reynolds*, 307 N.C. at 188-89, 297 S.E.2d at 535 (citation omitted). The trial court's instruction stated that if the victim was asleep or similarly incapacitated when sexual intercourse occurred (the basic fact), then force and lack of consent (the presumed facts) are implied in law.

There are two types of presumptions: a mandatory presumption or a permissive inference. *Ulster County Court v. Allen*, 442 U.S. 140, 157 n.16, 60 L. Ed. 2d 777, 792 n.16 (1979). "A mandatory presumption instructs the jury that it must infer the presumed fact if the state proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis v. Franklin*, 471 U.S. 307, 314, 85 L. Ed. 344, 353 (1985) (footnote omitted). In this case, the challenged instruction did not inform the jury that it could, but was not required, to draw the conclusion that force and lack of consent were established if the victim was asleep. Thus, the challenged instruction was a mandatory presumption. *See id.* at 316, 85 L. Ed. 2d at 354-55 (emphasis omitted) (indicating a challenged instruction was mandatory because "[t]he jurors 'were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it' ").

A mandatory presumption may be either conclusive or rebuttable. A conclusive presumption removes the presumed element from the case once the State has proven the predicate facts giving

rise to the presumption. A rebuttable presumption does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted.

*Id.* at 314 n.2, 85 L. Ed. 2d at 353 n.2 (citing *Sandstrom v. Montana,* 442 U.S. 510, 517-18, 61 L. Ed. 2d 39, 46-47). If the mandatory rebuttable presumption or the mandatory conclusive (also referred to as irrebuttable) presumptions have the effect of shifting the burden of persuasion to the defendant, the presumption violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution because the burden of persuasion is shifted to the defendant. *Id.* at 317, 85 L. Ed. 2d at 355. As explained in *Sandstrom v. Montana,* 442 U.S. at 522, 61 L. Ed. 2d at 49-50 (citations omitted and emphasis omitted), " '[a] conclusive presumption which testimony could not overthrow would effectively eliminate [the element] as an ingredient of the offense.' "

The challenged instruction in this case was a mandatory conclusive presumption because the trial court did not instruct that the defendant could rebut the presumption that force and lack of consent is implied in law if the victim was asleep, unconscious, or similarly incapacitated. Moreover, the use of the phrase "implied in law" indicates the challenged jury instruction was a conclusive presumption. The term "implied in law" means "[i]mposed by operation of law and not because of any inferences that can be drawn from the facts of the case." Black's Law Dictionary 770 (8th ed. 2004). Therefore, the trial court was essentially stating that force and lack of consent are established as a matter of law if at the time of the vaginal intercourse the victim was sleeping or similarly incapacitated. As the challenged instruction did not indicate the defendant could rebut the mandatory conclusive presumption and that the State still had the burden of persuasion, the jury instruction was unconstitutional.

A second problem with the challenged instruction is the trial court did not instruct the jury that the basic fact—the alleged victim was asleep, unconscious, or similarly incapacitated—had to be proven beyond a reasonable doubt. " '[A] State must prove every ingredient of an offense beyond a reasonable doubt, and . . . may not shift the burden of proof to the defendant' by means of a presumption." *Sandstrom,* 442 U.S. at 524, 61 L. Ed. 2d at 51. In the challenged instruction in this case, the trial court did not instruct the jury that it must find the basic fact beyond a reasonable doubt.

## STATE v. SMITH

[170 N.C. App. 461 (2005)]

However, if a portion of a jury instruction is unconstitutional because it shifts the burden of persuasion to the defendant, if the jury charge as a whole explains or cures the error, then the charge as a whole is not unconstitutional. *Francis v. Franklin*, 471 U.S. at 318-19, 85 L. Ed. 2d at 356-57. Other instructions might explain the erroneous language to the extent that there was not a reasonable likelihood the jury applied the instruction in an unconstitutional manner. *Id.* at 315, 85 L. Ed. 2d at 354.

In this case, at the beginning of the trial court's instructions, it stated:

> Under our system of justice, when a Defendant pleads not guilty, he is not required to prove his innocence, he is presumed to be innocent. The State must prove to you beyond a reasonable doubt that the Defendant is guilty.
>
> A reasonable doubt is a doubt based on reason and common sense, arising out of some or all of the evidence that had been presented or lack of insufficiency of the evidence as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the Defendant's guilt.

In *Francis*, the United States Supreme Court indicated that

> general instructions on the State's burden of persuasion and the defendant's presumption of innocence are not "rhetorically inconsistent with a conclusive or burden-shifting presumption," because "[t]he jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt . . . could be satisfied. . . ." These general instructions as to the prosecution's burden and the defendant's presumption of innocence do not dissipate the error in the challenged portion of the instruction.[1]

*Francis*, 471 U.S. at 319-20, 85 L. Ed. 2d at 356-57.

---

1. Initially, the test to determine the constitutionality of a jury instruction regarding a presumption was whether a reasonable juror could have understood the jury instruction in an unconstitutional manner. *See Francis v. Franklin*, 471 U.S. at 315, 85 L. Ed. 2d at 354. The United States Supreme Court rejected the "reasonable juror" test in *Boyde v. California*, and adopted the "reasonable likelihood" test for assessing the constitutionality of a jury instruction on a presumption. *See Boyde*, 494 U.S. at 380, 108 L. Ed. 2d at 329 (indicating the reasonable juror standard has been rejected and replaced with a reasonable likelihood standard); *see also Estelle v. McGuire*, 502 U.S. at 72-73, 116 L. Ed. 2d at 399. Under the reasonable likelihood test, a defendant must show more than a possibility that the jury applied the instruction in an unconstitutional manner, but need not establish that the jury was more likely than not to have

Immediately after instructing on the elements of second degree rape and giving the challenged instruction, the trial court stated to the jury:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant engaged in vaginal intercourse with the victim and that he did so by force and that this was sufficient to overcome any resistance which the victim might make, and that the victim did not consent and it was against her will, it would be your duty to return a verdict of guilty.
>
> If you do not so find or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

This instruction also does not cure the error. "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Francis*, 471 U.S. at 322, 85 L. Ed. 2d at 358 (footnote omitted).

A third problem with the challenged instruction is the trial court did not explain to the jury how to use the presumption. As explained in *Sandstrom v. Montana*, without qualifying instructions as to the legal effect of a presumption, the jury may conclude the presumption was (1) a direction by the trial court to find force and lack of consent upon proof that the alleged victim was asleep, or (2) the jury may have interpreted the instruction as a direction to find force and lack of consent upon proof the alleged victim was asleep unless the defendant proved the contrary by some quantum of proof considerably greater than "some evidence," thus shifting the burden of persuasion on the element. *Sandstrom*, 442 U.S. at 516-17, 61 L. Ed. 2d at 46.

In this case, there is a reasonable likelihood the jury misapplied the instruction because it was not informed it had to find the basic fact beyond a reasonable doubt, that the State still had the ultimate burden of persuasion, and that upon proof of the basic fact, the defendant only had to come forward with some evidence. Furthermore,

---

misapplied the instruction. *State v. Jennings*, 333 N.C. at 621, 430 S.E.2d at 209. Although in *Francis v. Franklin*, the United States Supreme Court utilized the reasonable juror standard, we conclude its analysis is still correct under a reasonable likelihood test.

there is a reasonable likelihood the jury understood the trial court's instruction as establishing the victim was asleep notwithstanding any evidence to the contrary. As explained in *Franklin*,

"The Due Process Clause of the Fourteenth Amendment 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' This 'bedrock, "axiomatic and elementary" [constitutional] principle[]' prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime."

*Francis*, 471 U.S. at 313, 85 L. Ed. 2d at 352 (citation omitted).

Another problem with the challenged instruction is that if the defendant produces some evidence rebutting the connection between the basic fact (victim is asleep) and the presumed fact (force and lack of consent), the mandatory presumption disappears and only a permissive inference arises. As explained in *Reynolds*, if the defendant comes forward with some evidence to rebut the connection between the basic and presumed facts, the mandatory presumption disappears, leaving only a mere permissive inference. *Reynolds*, 307 N.C. at 189, 297 S.E.2d at 535. In this case, defendant testified that (1) the alleged victim was not asleep, and (2) he initiated sexual intercourse based upon the mutual kissing and touching between defendant and the alleged victim. The alleged victim testified, however, that after sexual intercourse was initiated, she told defendant to stop but defendant continued. The transcript of the recorded phone conversation supports both versions. Thus, whether there was consent and whether the alleged victim was asleep was controverted and presented a jury question. Under these facts, a mandatory presumption does not arise.

Therefore, the question becomes what would have been a permissible and constitutional instruction under the facts of this case. As the evidence regarding whether the alleged victim was asleep during the sexual intercourse was disputed by the parties, the trial court could not incorporate a mandatory presumption into the jury instruction. *See Reynolds*, 307 N.C. at 189, 297 S.E.2d at 535. Rather, the trial court could only instruct on a permissive inference. *See id.* (indicating that if the defendant comes forward with some evidence to rebut the connection between the basic and presumed facts, the mandatory presumption disappears, leaving only a mere permissive inference).

In *State v. Holder*, 331 N.C. 462, 418 S.E.2d 197 (1992), the Supreme Court of North Carolina discussed whether the trial court properly instructed the jury on a permissive inference in a first degree murder case. *Id.* at 486-87, 418 S.E.2d at 210-11. Specifically, the defendant argued in *Holder* that the trial court improperly instructed on the inference that "the law implies malice and unlawfulness from the intentional use of a deadly weapon proximately resulting in death[.]" *Id.* at 487, 418 S.E.2d at 211. In *Holder*, our Supreme Court held the following jury instruction properly instructed the jury on the permissive inference, including how to use it in the jury's deliberations:

> "If the State proved beyond a reasonable doubt that the defendant killed the victim with a deadly weapon, or intentionally inflicted a wound upon the victim with a deadly weapon that proximately caused the victim's death, you may infer, first, that the killing was unlawful, and second, that it was done with malice, but you're not compelled to do so. You may consider this, together with all the other facts and circumstances, in determining whether the killing was unlawful and whether it was done with malice. And, of course, a firearm is a deadly weapon."

*Id.* at 486, 418 S.E.2d at 210. Our Supreme Court held this instruction was permissible and not unconstitutional because

> "the trial court did not instruct the jury that malice should be *presumed*. On the contrary, the trial court instructed the jury that it 'may infer' that the killing was unlawful and committed with malice, but that it was not compelled to do so. The trial court properly instructed the jury that it should consider this permissive inference along with all the other facts and circumstances . . . in deciding whether the State had proven malice beyond a reasonable doubt."

*Id.* at 487, 418 S.E.2d at 211 (citation omitted). Unlike the instruction in *Holder*, by using the phrase "implied in law," the trial court instructed the jury in this case that it had to find force and lack of consent was established if the alleged victim was asleep. Indeed, "instructions, where the word 'implied' or phrase 'implied in law' were used, have consistently been held to have created mandatory presumptions." *Bush v. Stephenson*, 669 F.Supp. 1322, 1332 (E.D.N.C. 1986) (discussing an unconstitutional jury instruction used in a North Carolina first degree murder trial and citing *Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508 (1975); *Engle v. Koehler*, 707 F.2d 241

(6th Cir. 1983), *affirmed by an equally divided court*, 466 U.S. 1, 80 L. Ed. 2d 1 (1984); *Harless v. Anderson*, 664 F.2d 610 (6th Cir. 1981), *rev'd on other grounds*, 459 U.S. 4, 74 L. Ed. 2d 3 (1982); *Rook v. Rice*, 783 F.2d 401, 405 (4th Cir.), *cert. denied*, 478 U.S. 1022, 92 L. Ed. 2d 745 (1986)). The trial court should have instructed the jury in this case that it *may infer* force and lack of consent instead of stating "[f]orce and lack of consent are implied in law . . . ."

The dissent states, however, the jury instruction in this case was not unconstitutional, impermissible, and prejudicial because the jury had to make credibility findings in order to determine whether there was force and lack of consent. Specifically, the dissent emphasizes the portion of the challenged jury instruction beginning with "if": "[f]orce and lack of consent are implied in law if at the time of the vaginal intercourse the victim is sleeping . . . ." However, the trial court failed to instruct the jury that it had to find the victim was asleep *beyond a reasonable doubt. See Holder*, 331 N.C. at 486, 418 S.E.2d at 210 (holding the instruction " '[i]f the State proved beyond a reasonable doubt that the defendant killed the victim with a deadly weapon . . .' " was constitutional and permissible); *see also Reynolds*, 307 N.C. at 189, 297 S.E.2d at 535. The trial court also failed to instruct the jury that " 'it should consider [the] permissive inference along with all the other facts and circumstances[,]' " including defendant's evidence tending to indicate the alleged victim was not asleep. *Holder*, 331 N.C. at 487, 418 S.E.2d at 211 (citation omitted).

Third, the trial court failed to instruct the jury that *it was not compelled* to infer the elements of force and lack of consent even if they determined beyond a reasonable doubt the victim was asleep. *See id.; see also Ulster County Court*, 442 U.S. at 157, 60 L. Ed. 2d at 792.

In sum, the trial court's jury instruction on force and lack of consent was unconstitutional and impermissible because (1) it utilized mandatory presumption language instead of permissive inference language, (2) it did not inform the jury it was free to reject the permissive inference, (3) the jury was not informed it had to consider the defendant's evidence countering the State's evidence that the alleged victim was asleep, and (4) the jury was not instructed it had to find the victim was asleep beyond a reasonable doubt.

However, in *Rose v. Clark*, 478 U.S. 570, 92 L. Ed. 2d 460 (1986), the United States Supreme Court indicated the harmless-error test applies to jury instructions that violate the principles of *Sandstrom v.*

*Montana,* 442 U.S. 510, 61 L. Ed. 2d 39 and *Francis v. Franklin,* 471 U.S. 307, 85 L. Ed. 2d 344. "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2003); *see also Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11 (1967) (stating "before a federal constitutional error can be held harmless, the court must . . . declare a belief that it was harmless beyond a reasonable doubt").

Defendant was indicted and tried for second degree rape, which consists of the following elements: "the defendant (1) engage[d] in vaginal intercourse with the victim; (2) by force; and (3) against the victim's will." *State v. Scercy,* 159 N.C. App. 344, 352, 583 S.E.2d 339, 344 (2003); N.C. Gen. Stat. § 14-27.3. In this case, whether the parties engaged in vaginal intercourse was not at issue as both defendant and the alleged victim testified that sexual intercourse occurred. Thus, the only elements to be resolved were force and against the victim's will. The State and defendant presented contradictory evidence on these elements. Whereas the victim testified that after she said no, the defendant engaged in sexual intercourse with her while she was asleep, the defendant testified that the sexual intercourse was consensual and that the victim was awake and aware of what was occurring because she and the defendant were engaged in mutual touching and kissing prior to the initiation of sexual intercourse. The recorded telephone conversation supports both versions of the events. Thus, there were issues of fact and credibility to be resolved by the jury. However, the trial court impermissibly instructed the jury that two elements—force and lack of consent—were established as a matter of law. Under the facts of this case, whether those elements had been established beyond a reasonable doubt was a jury question. Even assuming the trial court could instruct on the presumption, the trial court's jury instruction created a reasonable likelihood that the jury did not deliberate upon the contradictory evidence, but rather understood the trial court's instruction to mean force and lack of consent had been established. Moreover, there is a reasonable likelihood the jury concluded the victim was asleep by a standard less than beyond a reasonable doubt. Finally, upon the introduction of rebutting evidence, the mandatory presumption disappeared and the jury could only have been given a permissive inference instruction. Accordingly, we conclude the erroneous jury instruction was not harmless beyond a reasonable doubt. Thus, defendant is entitled to a new trial.

STATE v. SMITH

[170 N.C. App. 461 (2005)]

As we have concluded defendant is entitled to a new trial, it is unnecessary to resolve defendant's second issue.

New trial.

Judge JACKSON concurs.

Judge BRYANT dissents in a separate opinion.

BRYANT, Judge dissenting.

The majority holds the trial court's instructions, which allowed the jury to infer lack of consent to penetration if the jury found victim was sleeping, were prejudicial and therefore entitled defendant to a new trial. Because I believe the trial court did exactly as the law requires in instructing the jury, and defendant received a fair trial free from any error, prejudicial or otherwise, I dissent from the majority opinion.

Defendant was convicted by a jury of second degree rape.

A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:

(1) by force and against the will of the other person; or

(2) Who is mentally disabled, mentally incapacitated, or physically helpless.

N.C. Gen. Stat. § 14-27.3 (2003).

The majority states the trial court's instruction to the jury on second degree rape created a mandatory presumption and thereby impermissibly shifted the burden of proof to defendant. In other words, based on *State v. White*, the jury instruction given "pre-judge[d] the existence of an elemental issue or actually shift[ed] to defendant the burden to disprove the existence of an elemental fact[.]" See *State v. White*, 300 N.C. 494, 507, 268 S.E.2d 481, 489 (1980) (detailed discussion of difference between mandatory and permissive presumptions). The elemental issue in question is whether the offense was committed by the use of force and without the consent of the victim. Jury instructions are generally controlling in deciding what type of inference or presumption might be involved in a case. *Id.*

The recommended Pattern Jury Instruction for Second Degree Rape, most of which the trial court gave verbatim, reads as follows:

N.C.P.I.—Crim. 207.20 states:

The defendant has been charged with second degree rape. For you to find the defendant guilty of this offense, the state must prove three . . . things beyond a reasonable doubt: First, that the defendant engaged in vaginal intercourse with the victim. Vaginal intercourse is penetration, however slight, of the female sex organ by the male sex organ. (The actual emission of semen is not necessary.) Second, that the defendant used or threatened to use force sufficient to overcome any resistance the victim might make. **(The force necessary to constitute rape need not be actual physical force. Fear or coercion may take the place of physical force.)** And Third, that the victim did not consent and it was against her will. **(Consent induced by fear is not consent in law.)** If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant engaged in vaginal intercourse with the victim and that he did so by force or threat of force and that this was sufficient to overcome any resistance which the victim might make, and that the victim did not consent and it was against her will . . . it would be your duty to return a verdict of guilty. If you do not so find or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

N.C.P.I.—Crim. 207.20 (2003) (emphasis added).

The one exception to the pattern jury instructions occurred when the trial court substituted the phrase "Consent induced by fear is not consent in law" with the following language: "Force and lack of consent are implied in law if at the time of the vaginal intercourse the victim is sleeping or similarly incapacitated." Here the trial court based its instruction in part, on prior case law which held that force and lack of consent are implied in law upon the showing of sexual intercourse with a sleeping person. *See State v. Moorman*, 320 N.C. 387, 358 S.E.2d 502 (1987). *Moorman* is clearly applicable and on point. The majority, however, attempts to distinguish *Moorman* from this case by stating that "in *Moorman*, the appellate courts were reviewing the indictment and the evidence presented, not whether the jury was properly instructed on the law regarding second degree rape." Notwithstanding, *Moorman* states:

In the case of a sleeping, or similarly incapacitated victim, it makes no difference whether the indictment alleges that the vaginal intercourse was by force and against the victim's will or whether it alleges merely the vaginal intercourse with an incapacitated victim. In such a case sexual intercourse with the victim is *ipso facto* rape because the force and lack of consent are implied in law.

*Moorman* at 392, 358 S.E.2d at 506.

In *Moorman,* the court was merely restating what was firmly rooted in the common law from which our statutes on sexual offenses developed. The phrase, "by force and against the will of another person," found in our state's rape and sexual offense statutes "means the same as it did at common law when it was used to describe some of the elements of rape." *State v. Locklear,* 304 N.C. 534, 539, 284 S.E.2d 500, 503 (1981); *see* N.C.G.S. §§ 14-27.2 to -27.5 (1988). Force and lack of consent for the crime of rape were implied in law at common law if it was shown that the intercourse was with a person who was sleeping or unconscious or otherwise incapacitated. *Moorman* at 392, 358 S.E.2d at 506; *See also State v. Dillard,* 90 N.C. App. 318, 322, 368 S.E.2d 442, 445 (1988) (force and lack of consent implied in law when sexual offense perpetrated upon a victim who is sleeping or similarly incapacitated); *State v. Brown,* 332 N.C. 262, 420 S.E.2d 147 (1992). This developed, not as a means to determine how to charge in a rape indictment, but to state as a matter of substantive law, that a sleeping victim does not consent. Therefore, the trial court's instructions were based on the law as it has developed in our jurisprudence.

As to the element or elemental issue of force and lack of consent, the jurors heard evidence from the victim that she was asleep, then woke up while defendant was sexually penetrating her and that she never gave him permission to do so. They also heard evidence from the defendant that the victim was awake and that she consented to the penetration. The jury could have believed the victim's testimony and found she was sleeping and therefore could not consent, and that upon awakening she struggled with defendant and still did not give consent. On the other hand, the jury could have believed the defendant's testimony that the victim was not asleep, did not resist and did indeed consent to the sexual intercourse. The trial court's instruction that "force and lack of consent are implied in law **if** at the time of sexual intercourse the victim is sleeping. . ." is no more impermissible and prejudicial than the portion of the Pattern Jury Instruction—

"consent induced by fear is not consent in law"—that was substituted. Neither of these instructions impermissibly shift the burden to defendant. Under either version, the jury would have to make credibility findings (e.g. was the victim asleep; was the victim afraid) in order to determine whether there was force and lack of consent. Defendant was not required to come forth with any more evidence and therefore I would find there was no constitutional violation based on the court's instructions. If the trial court's instruction on force and lack of consent which was given pursuant to *Moorman* can be considered a presumption, it should be considered permissive, not mandatory.

Moreover, on appeal, it is defendant's burden to show, under the reasonable likelihood test of *Boyde v. California*, 494 U.S. 370, 380, 108 L. Ed. 2d 316, 329 (1990), more than a possibility that the jury applied the instruction in an unconstitutional manner. *State v. Jennings*, 333 N.C. 579, 621, 430 S.E.2d 188, 209 (1993). In other words, the harmless error test applies to jury instructions that violate *Sandstrom v. Montana* [442 U.S. 510, 61 L. Ed. 2d 39 (1979) (holding mandatory presumptions violate due process because the burden of persuasion is shifted to defendant)]. *Rose v. Clark*, 478 U.S. 570, 92 L. Ed. 2d 460 (1986); *See also Delaware v. Van Arsdall*, 475 U.S. 673, 681, 89 L. Ed. 2d 674, 471 (1986) (constitutional errors may be harmless "in terms of their effect on the factfinding process at trial") (emphasis added); *See also Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 711 *overturned on other grounds, r'hrg denied*, 386 U.S. 987, 18 L. Ed. 2d 241 (1967) (error is harmless if, beyond a reasonable doubt, it "did not contribute to the verdict obtained") (emphasis added).

In summary, because I believe the trial court properly instructed the jury according to law, and without violating any of defendant's constitutional rights, I would find defendant received a fair trial free from error.