An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-849

Filed 3 September 2025

Johnston County, Nos. 18CR001369-500 18CR054865-500

STATE OF NORTH CAROLINA

v.

JAMIE RICHARD DUPREE

Appeal by defendant from judgment entered 17 July 2023 by Judge Thomas H. Lock in Johnston County Superior Court. Heard in the Court of Appeals 14 August 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Keith T. Clayton, for the State.*

*Cooley Law Office, by Craig M. Cooley, for the defendant-appellant.*

TYSON, Judge.

Jamie Dupree ("Defendant") appeals from a jury's verdicts of guilty of second-degree murder and possession of a firearm by a felon. Our review discerns no error.

## I. Background

Selma Police Officers were dispatched to Patrick Braxton's ("Braxton")

residence after receiving reports of a person being shot on 1 August 2018. Shortly thereafter, Defendant turned himself in at the local magistrate's office after shooting and killing Shantwan Strickland ("Strickland").

State Bureau of Investigation Agent William Del Carmen ("SBI"), along with Selma Police Detective, Johnathan Solomon, were the first officers to speak with Defendant after he had surrendered to the magistrate. SBI Agent Del Carmen testified after Defendant was taken to an interview room in the Johnston County Sherrif's Office and was read his *Miranda* rights, he and Detective Solomon transferred Defendant back to the magistrate's office where Defendant began making "spontaneous utterances" about the incident despite initially invoking his right to remain silent. SBI Agent Del Carmen testified audio-video equipment in the magistrate's office captured Defendant's statements, which were subsequently transcribed. Defendant was indicted by the Johnson County Grand Jury on 6 August 2018 for possession of a firearm by felon and on 23 January 2023 for first degree murder of Strickland on 1 August 2018.

The evidence tended to show Defendant had known Strickland "since he was 6 years old," and had "taught him how to play basketball." Defendant had spoken with Strickland on the phone earlier in the day of the homicide, argued about "some dogs", and threats were exchanged. The conversation ended with Strickland telling Defendant he wanted to talk in person.

Defendant told Strickland to meet him in Selma at Braxton's residence, as he

planned to be there later that day. Before Defendant left to meet Strickland at Braxton's, he armed himself with his wife's gun. Defendant was a convicted felon at that time. At no point did Defendant contact the police or report to any authorities he felt threatened or feared for his life after his conversation with Strickland.

Upon arrival at Braxton's residence, Defendant went into the kitchen to wait for Strickland and stood with his gun "cocked and loaded" in plain sight. Strickland arrived at Braxton's residence about "five to seven minutes" later. Defendant and Strickland began arguing in the kitchen.

Defendant testified Strickland entered Braxton's residence yelling and cursing at him before an argument ensued. Strickland dove to grab Defendant's leg, which prompted Defendant to fire a first shot at Strickland. It missed. Strickland came at Defendant with a pillow, seeming to attempt to strike him with it. Defendant shot at Strickland for a second time, killing him. Defendant placed the gun on the counter and left the residence. Defendant met some family members after leaving Braxton's residence before deciding to surrender to the magistrate.

The State presented evidence of the locations of shell casings and the position of Strickland's deceased body in Braxton's home. The SBI's process for collecting evidence from the scene, and the procedures and methods used to collect and test for gunshot residue was presented through testimony of detectives and officers who had responded to the scene.

The State also presented evidence from the examination of the body conducted

by Associate Chief Medical Examiner, Nabila Haikal, M.D. Dr. Haikal testified Strickland's death was caused by a bullet passing through his torso. He explained the bullet had entered his body in his right upper back and exited through his abdomen. Dr. Haikal testified further the gun was fired at an "indeterminate" range based on various factors.

Defendant moved to dismiss both the murder and possession of a firearm charges by a felon on the grounds of insufficiency of evidence at the close of the State's evidence. The trial court denied Defendant's motion to dismiss. Defendant presented evidence including his own testimony and testimony of a medical examiner expert, Thomas Owens, M.D., the Director of the Mecklenburg County Medical Examiner's Office.

Dr. Owens testified the evidence tended to show Strickland was shot, while he was bent forward and facing towards Defendant, but he admitted it was possible Stickland was shot while he was facing away from Defendant. Dr. Owens' opinion was largely based on the description of the gunshot entrance wound abrasion on Strickland's upper back.

Defendant argued for the lesser-included charge of second-degree murder and the jury found him guilty of second-degree murder and possession of a firearm by a felon. The trial court found Defendant was a prior record level III with 7 points and imposed an active sentence in the presumptive range of 274 to 344 months for the second-degree murder conviction, and a consecutive presumptive sentence of 15 to 27

months for the possession of a firearm by a felon. Defendant appealed in open court.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2023).

## III. Issues

Defendant argues the trial court erred by: (1) denying his motion to dismiss the first-degree murder charge; (2) giving the N.C. Gen. Stat. § 14-51.4(1) (2023)'s self-defense disqualifier instruction to the jury; and, (3) overruling his objection to the prosecutor's closing statement.

## IV. Motion to Dismiss

Defendant argues his motion to dismiss the first-degree murder charge and any lesser-included offenses arising from killing Strickland should have been granted because the State presented insufficient evidence from which the jury could find Defendant did not act in perfect self-defense when he shot Strickland.

### A. Standard of Review

"'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence: (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78- 79, 265 S.E.2d 164, 169 (1980) (citation omitted). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (citation and quotation marks omitted)

If the court decides "a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts . . . satisfy . . . beyond a reasonable doubt that the defendant is actually guilty." *Id.* (citation omitted). "This Court reviews the trial court's denial of a motion to dismiss de novo." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

## B. Analysis

North Carolina law excuses a killing under perfect self-defense only if all four elements are met:

> (1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and
>
> (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, *i.e.,* he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, *i.e.,* did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Harvey*, 372 N.C. 304, 307–08, 828 S.E.2d 481, 483 (2019).

N.C. Gen. Stat. § 14-51.3 (2023) "supplants the common law on all aspects of the law of self-defense addressed by its provisions" by following "th[e] earlier common law definition of the right to self-defense in providing that an individual may use force 'against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force.'" *State v. McLymore*, 380 N.C. 185, 191, 868 S.E.2d 67, 72 (2022) (citation omitted). "Therefore, when a defendant in a criminal case claims perfect self-defense, the applicable provisions of N.C. [Gen. Stat.] § 14-51.3 [] and . . . the disqualifications provided under [N.C. Gen. Stat.] § 14-51.4 [] govern." *Id.* at 191, 868 S.E.2d at 73.

Considering the third element of perfect self-defense, a reasonable trier of fact could find Defendant to be the aggressor in this situation, resulting in a denial of Defendant's motion to dismiss based on a perfect self-defense justification. *See State v. Presson*, 229 N.C. App. 325, 329, 747 S.E.2d 651, 655 (2013) ("The test on a motion to dismiss is whether the State has presented substantial evidence which, . . . would

be sufficient to convince a rational trier of fact that the defendant did not act in self-defense.") (citation omitted).

Before Defendant left to meet Strickland at Braxton's, he had armed himself with a gun it was illegal for him to possess and stood with the gun "cocked and loaded" when Strickland walked in the front door. It is also clear the fight was without "legal excuse or provocation" *Id.*, considering the altercation arose from a disagreement about "some dogs" and was a pre-planned meeting to discuss the matter.

Although possession of a firearm, even by a felon, alone cannot establish Defendant as the aggressor, the consideration of the positioning of the gun and it being used in a threatening manner towards Strickland as soon as he entered Braxton's residence may reasonably qualify Defendant as the aggressor. *State v. Williams*, 283 N.C. App. 538, 543, 873 S.E.2d 433, 437 (2022).

Strickland was not shown to be in possession of any firearms or weapons when he entered Braxton's residence. Defendant told Detective Solomon Strickland had picked up a pillow after the first shot had missed. A reasonable trier of fact could also conclude from the evidence Defendant used "more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm." *State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 573 (1981) (citation omitted).

In *State v. Anderson*, our Supreme Court stated self-defense cannot justify the taking of life unless the killing is, or reasonably appears to be, necessary to prevent

death or serious injury. 230 N.C. 54, 55, 51 S.E.2d 895, 896 (1949). Despite Stickland's advantages in age, physical size, and strength compared to Defendant, the jury could conclude it would not be reasonably necessary for Defendant to use deadly force of a firearm against Strickland, who was completely unarmed in the altercation. *See State v. Pearson*, 288 N.C. 34, 43-44, 215 S.E.2d 598, 605 (1975) (The defendant, who was attacked by three men who did not assault him with deadly force, was not privileged to use deadly force to repel the attack unless, due to great disparity in strength, size and numbers between him and assailants, he believed and had reasonable basis for belief that he would be subjected to death or great bodily harm if he did not defend himself with deadly force.).

Defendant would also not be justified in his actions based on N.C. Gen. Stat. § 14-51.2 (2023), which justifies defense of one's self, family, home, work, or motor vehicle. *State v. Phillips*, 386 N.C. 513, 521, 905 S.E.2d 23, 30 (2024) ("The castle doctrine statute, entitled [h]ome, workplace, and motor vehicle protection; presumption of fear of death or serious bodily harm[.]") (citation omitted). The conflict between Defendant and Strickland did not arise out of an attack on Defendant's "home, work, or motor vehicle", and the altercation did not take place at any of those locations or circumstances. Defendant is not entitled to castle doctrine protection, nor did he act in perfect self-defense. *Id*.

The State presented sufficient evidence from which the jury could find Defendant did not kill in perfect self-defense, Defendant's argument is without merit

and overruled.

## V.    Felony Disqualifier Instruction

Defendant argues the trial court erred in giving the jury the disqualification instruction pursuant to N.C. Gen. Stat. § 14-51.4(1) (2023), because the State had failed to introduce any evidence establishing a casual connection between Defendant's possession of the firearm and his firing the fatal gunshots causing Strickland's death.

### A.  Standard of Review

"The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence." *State v. Cameron*, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973) (citation omitted). "It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence." *State v. Shaw*, 322 N.C. 797, 803, 370 S.E.2d 546, 549 (1988).

"Whether a jury instruction correctly explains the law is a question of law, reviewable by this Court *de novo*." *State v. Barron*, 202 N.C. App. 686, 694, 690 S.E.2d 22, 29, (2010) (citation omitted). "Failure to instruct upon all substantive or material features of the crime charged is error." *State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989) (citations omitted).

"[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial." *Id*. "Where jury instructions are given without

supporting evidence, a new trial is required." *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995) (citation omitted). "However, an error in jury instructions is prejudicial and requires a new trial only if 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.'" *State v. Castaneda*, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009) (quoting N.C. Gen. Stat. § 15A-1443(a) (2007)).

## B. Analysis

Generally, defensive force is not justified for any person who: "(1) [w]as attempting to commit, committing, or escaping after the commission of a felony. . ." N.C. Gen. Stat. § 14-51.4 (1) (2023). Our Supreme Court held in *McLymore*, "in order to disqualify a defendant from justifying the use of force as self-defense pursuant to N.C. G[en Stat.] § 14-51.4(1), the State must prove the existence of an immediate causal nexus between the defendant's disqualifying conduct and the confrontation during which the defendant used force." *McLymore*, 380 N.C. at 197, 868 S.E.2d at 77.

Defendant argues the State failed to present sufficient evidence that Defendant's illegal possession of the firearm "set in motion an unbroken chain of events leading to" Strickland's death, and therefore was incorrect to instruct the jury on the felony disqualification for a claim of self-defense. The State presented substantial evidence through Braxton's testimony, Defendant's interview with Detective Solomon, the testimony of Dr. Haikal, and the cross-examinations of both

Dr. Owens and Defendant, from which a rational juror could conclude Defendant's possession of the gun was directly related to his prior argument with Stickland, to support the felony-disqualifier instruction.

In *State v. Williams*, this Court reversed the trial court's decision to not instruct the jury on a defense of others affirmative defense instruction and a causal nexus instruction. 283 N.C. App. 538, 544, 873 S.E.2d 433, 438 (2022). The defendant in *Williams* had been known to take steps to protect the victim's girlfriend from being abused by the victim: the defendant had seen the victim attack his girlfriend, climbing on top of her, and threatening he would "kill her" on different occasions. *Id*. The decedent in *Williams* had pulled a firearm on the defendant in the course of his defending the victim's girlfriend. *Id*. From these facts, there was a reasonable probability the jury could find and conclude, absent the firearm the defendant possessed as a felon, the defendant still would have harmed the victim in defense of the victim's girlfriend, thus warranting the defense of others and causal nexus instruction.

The facts here are distinguishable from *Williams*. Absent the illegal felony possession of the firearm by Defendant in the altercation with Strickland, a jury could reasonably conclude Strickland would not have been shot. The causal nexus test is met according to *McLymore,* and the felony disqualifier instruction was warranted. *McLymore*, 380 N.C. at 197, 868 S.E.2d at 77.

No evidence tends to show Defendant possessed the firearm for any reason

other than to potentially harm Strickland, even if in preparation to protect himself. Defendant took the gun from his wife specifically to meet Strickland at Braxton's. He made sure the gun was loaded, cocked, and visible for Strickland to see when he walked in the door, alluding he planned to use it to harm or to threaten Strickland in some way. He fired a shot at Strickland and missed.

Both the testimony from Drs. Haikal and Owens suggest Defendant had shot Strickland while he was close to Defendant and not necessarily in the process of harming Defendant. Use of a firearm in this way draws a direct connection between Defendant's possession of the firearm and Strickland's death, further solidifying the causal nexus of the firearm to the killing. *Id.*

Defendant had not been known to carry a firearm at all times, evident in the fact he had borrowed the gun from his wife, nor did he retrieve the firearm to use in the face of immediate threat to life or of bodily harm. *See State v. Coley* 263 N.C. App. 249, 256, 822 S.E.2d 762, 767 (2018), *aff'd*, 375 N.C. 156, 846 S.E.2d 455 (2020) (The Court upheld a self-defense jury instruction for a defendant charged with possession of a firearm by a felon and assault with a deadly weapon where the defendant presented evidence that he reasonably believed deadly force was necessary to repel an attack, including testimony about prior assaults by the victim and uncertainty about whether the victim had retrieved a weapon before returning to the defendant's home). Considering the absence of facts to support either of these conclusions, the trial court did not err in instructing the jury on the felony disqualifier instruction.

Presuming, without deciding, the trial court did err in instructing the jury on the felony disqualifier instruction, Defendant cannot establish absent the instruction, the jury would have returned a different verdict to show prejudice. Defendant argued for and was convicted of the lesser-included offense of second-degree murder to his indictment for first degree murder. Defendant's argument is overruled.

## VI. Prosecutor's Closing Argument

### A. Standard of Review

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. Rule 10(a)(1) (emphasis supplied). This is especially important in constitutional questions, as "constitutional issues not raised before the trial court 'will not be considered for the first time on appeal." *State v. Spence*, 237 N.C. App. 367, 370, 764 S.E.2d 670, 674 (2014) (quoting *State v. Ellis*, 205 N.C. App 650, 654, 696 S.E.2d 536, 539 (2010)).

"[A]defendant must voice his objection at trial such that it is apparent from the circumstances that his objection was based on the violation of a constitutional right." *Id*. Constitutional questions receive *de novo* review on appeal. *State v. Ortiz-Zape*, 367 N.C. 1, 10, 743 S.E.2d 156, 163 (2013). Otherwise, timely non-constitutional objections to improper closing arguments are reviewed for an abuse of discretion. *State v. Abbitt*, 278 N.C. App. 692, 702, 863 S.E.2d 301, 309 (2021).

## B. Preservation

During the State's closing argument, the State argued:

> Number one, the size, age and strength of the defendant as compared to the victim. And defense spent a lot of time on this. They want you to believe that S[trickland] is some muscle man walking around beating up anybody that he doesn't like. That he has a reputation in the community for carrying out his threats. Who told you that? Did they bring in witnesses from Selma to tell you oh, yeah, everybody knows Heavy. Watch out for Heavy.

Defendant's counsel objected, stating: "Burden shifting." The trial court overruled the objection. The State continued their closing argument:

> Did you hear them bring anybody from Selma say watch out for Heavy? He is a bad dude. We are all afraid of Heavy. He carries out the threats. No. All you heard was the self-serving statement of the defendant. He got up there and said what - - what is my - - knowledge of this reputation? My knowledge of his reputation is that he carries out his threats[,]

The State contends Defendant's objection to "burden shifting" failed to preserve a constitutional issue for appellate review. We disagree.

The facts and holding in *State v. Spence* are particularly illustrative here. In *Spence*, the trial court emptied the courtroom during the alleged victim's testimony because audience members were purportedly distracting the witness. *Spence*, 237 N.C. App. at 370, 764 S.E.2d at 674. The defendant objected, expressing concern "the jury may feel that somehow my part of the audience had something to do with the witness's behavior and I don't think that's the case." *Id.* The defendant's objection

was made "in direct response to the trial court's ruling to remove all bystanders from the courtroom – a decision that directly implicates defendant's constitutional right to a public trial." *Id.* at 370, 764 S.E.2d at 674-75. Despite the defendant's failure to more explicitly raise the violation of the Sixth Amendment entitlement to a public trial, the objection was sufficient to preserve the constitutional issue on appeal. *Id.*

Defendant's objection to "burden shifting" is sufficient to preserve the Due Process issue on appeal. The Fourteenth Amendment protects a defendant against a criminal conviction unless the State can prove beyond a reasonable doubt each material fact and element to constitute the alleged crime. *State v. Abbitt*, 385 N.C. 28, 40, 891 S.E.2d 249, 257 (2023).

Improper burden-shifting amounts to a violation of the Due Process Clause of the Fourteenth Amendment. *State v. Smith*, 170 N.C. App. 461, 470, 613 S.E.2d 304, 311 (2005). Because the burdens of proof and persuasion lay with the State, Defendant's objection to "burden shifting" necessarily implicated and preserved the challenge under the Due Process Clause. *Id.*

Here, no constitutional violation occurred. A prosecutor may "bring to the jury's attention 'a defendant's failure to produce exculpatory evidence or contradict evidence presented by the State.'" *Id.* at 728, 360 S.E.2d at 796 (quoting *State v. Mason*, 317 N.C. 283, 287, 345 S.E.2d 195, 197 (1986)). The prosecutor is similarly allowed to "comment on the defendant's failure to produce witnesses to corroborate the truth of defendant's testimony." *Id.* at 729, 360 S.E.2d at 796 (quoting *State v.*

*Young*, 317 N.C. 396, 415, 346 S.E.2d 626, 637 (1986)). Doing so does not shift the burden to the defendant in violation of the Fourteenth Amendment. *Id.*

Defendant testified Strickland had a reputation in the community for following through on threats of violence. No other witness testified or other evidence was presented to corroborate this characterization of the community's perception of Strickland's reputation for violence. In closing arguments, the State called to the jury's attention the lack of corroborating evidence on this point.

Defendant had previously testified he had known Strickland "all of his life[,] and he "was a good guy. He wasn't like a bad guy." Emphasizing a weakness in Defendant's case and commenting for the jury to make a credibility and weight determination of a witness' testimony does not shift the burden of proof to the defendant and does not arise to a violation of Defendant's Fourteenth Amendment Due Process rights. Defendant's argument is overruled.

## VII.  Conclusion

The trial court did not err in denying Defendant's motion to dismiss the first-degree murder charge and any lesser-included offenses, in giving the N.C. Gen. Stat. § 14-51.4(1)'s self-defense disqualifier instruction to the jury, and by denying his preserved objection to the State's closing argument.

Defendant received a fair trial free from prejudicial errors he preserved and argued. Our review shows no error in Defendant's convictions or in the judgments entered thereon. *It is so ordered.*

NO ERROR.

Judges ARROWOOD and CARPENTER concur.

Report per Rule 30(e).