STATE OF NORTH CAROLINA
v.
JAMES ERIC PRESSON

No. COA12-1518

Filed 20 August 2013

**1. Homicide—voluntary manslaughter—motion to dismiss—sufficiency of evidence—not acting in perfect self-defense**

The trial court did not err by denying defendant's motion to dismiss the charge of voluntary manslaughter. The State presented sufficient evidence to permit a reasonable jury to find that defendant was not acting in perfect self-defense. A reasonable jury could find that defendant was the aggressor and used excessive force.

**2. Criminal Law—jury instruction—self-defense—aggressor**

The trial court did not commit plain error in a voluntary manslaughter case by instructing the jury that defendant would lose the right to self-defense if he was the aggressor. Contrary to defendant's assertion, there was sufficient evidence for the jury to find he was the aggressor.

**3. Jury—denial of request to review testimony—harmless error**

The trial court did not abuse its discretion in a voluntary manslaughter case by denying the jury's request to review the testimony of a security guard. Any error in the trial court's denial of the jury's request to review testimony was harmless since the testimony tended to show defendant's guilt as opposed to his innocence. Further, the trial court instructed the jury to recall and consider all evidence that had been introduced at trial.

Appeal by defendant from judgment entered 25 May 2012 by Judge Walter H. Godwin, Jr., in Dare County Superior Court. Heard in the Court of Appeals 5 June 2013.

STATE v. PRESSON

[229 N.C. App. 325 (2013)]

*Attorney General Roy Cooper, by Special Deputy Attorney General Tina A. Krasner, for the State.*

*Kimberly P. Hoppin, for defendant-appellant.*

BRYANT, Judge.

Where there was sufficient evidence presented that defendant was the aggressor or used excessive force in this homicide case, we reject defendant's challenges to the sufficiency of the evidence and to the jury instructions and find no prejudicial error in the trial court's response to a jury request.

### Facts and Procedural History

On 6 June 2010, defendant James Eric Presson had arranged to meet his cousin Jessica at a local bar after work. Upon arriving, defendant discovered Jessica was preparing to enter a wet T-shirt contest. Defendant first followed her into the ladies room where she was about to change but was made to leave. When Jessica came out of the ladies room, defendant physically picked her up and carried her out of the bar to stop her from participating in the contest. They caused a scene outside the bar with Jessica yelling at defendant and trying to get away from him, telling him not to put his hands on her while defendant had her by the shoulders trying to prevent her going back into the bar. When people, including the head of security, started coming outside to see what was going on, Jessica was able to squeeze through the crowd, get away from defendant, and go back inside. Brandon Presgraves, a friend of Jessica's, confronted defendant outside the bar regarding defendant's actions. Friends escorted Brandon away from the confrontation. Brandon, however, went outside again and attempted to punch defendant; defendant was able to avoid Brandon's punch and delivered a punch to Brandon's face.

Donnie Fox, a bouncer and head of security that night, disrupted the fight and ordered both defendant and Brandon to leave the bar. Defendant began walking along a beach road carrying his bag which included among other things, his chef's knife. (Defendant was a cook at a local restaurant.) Brandon was seen running after defendant with nothing but his T-shirt in his hands. Defendant testified that he was struck in the head with an object swung by Brandon, but could not tell what the object was, just that it was "long, like a pole." He testified that Brandon attacked him, that Brandon choked him and forced defendant's head underwater. Defendant testified that he flailed at Brandon with his knife and stabbed him, before leaving the scene. Defendant called his father

who picked him up, and they contacted police to report the incident. Brandon was found dead, floating face down in water that had collected beside the road. He had been stabbed 33 times.

Defendant's chef's knife, a 12-inch knife with an 8-inch blade, was found approximately 30 feet from Brandon's body, in the general area defendant admitted throwing it. After more than two hours searching however, investigators never found anything resembling the weapon defendant alleges Brandon used to hit him.

Defendant was arrested, and later indicted on one count of second-degree murder. Following a trial by jury beginning at the 21 May 2012 session of Superior Court of Dare County defendant was found guilty of the lesser included offense of voluntary manslaughter. Judgment was entered on 25 May 2012, and defendant was ordered to serve an active term of imprisonment of 73 to 97 months. Defendant appeals.

---

Defendant raises three issues in this appeal: whether the trial court erred in (I) denying defendant's motion to dismiss where the State presented insufficient evidence that defendant was not acting in perfect self-defense; (II) instructing the jury that defendant may not receive the benefit of self-defense if he was the aggressor where evidence did not support defendant was the aggressor; and (III) denying the jury's request to review the testimony of Donnie Fox.

## I. Motion to Dismiss

[1] Defendant first contends the State failed to present sufficient evidence that defendant was not acting in perfect self-defense and that the trial court erred in denying his motion to dismiss. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). When ruling on a motion to dismiss for insufficient evidence, the trial court must determine whether the State presented substantial evidence of each essential element of the charged offense and that defendant was the perpetrator. *State v. Turnage*, 362 N.C. 491, 493, 666 S.E. 2d 753, 755 (2008) (citing *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996)). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its

favor." *State v. Sheppard,* ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, No. COA12-1435, 2013 WL 3305439, at *2 (2013) (quoting *State v. Rose,* 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994)).

"Voluntary manslaughter is the unlawful killing of a human being without malice . . . and without premeditation and deliberation. Voluntary manslaughter occurs when one kills intentionally, but does so in the heat of passion aroused by adequate provocation or in the exercise of self-defense where excessive force is used or defendant is the aggressor." *State v. Lassiter,* 160 N.C. App. 443, 454, 586 S.E.2d 488, 497 (2003) (citation omitted).

> Perfect self-defense excuses a killing altogether while imperfect self-defense may reduce a charge of murder to voluntary manslaughter. For a defendant to be entitled to an instruction on either perfect or imperfect self-defense, the evidence must show that defendant believed it to be necessary to kill his adversary in order to save himself from death or great bodily harm. In addition, defendant's belief must be reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness.

*State v. Ross,* 338 N.C. 280, 283, 449 S.E.2d 556, 559-60 (1994) (citations omitted).

There are four elements required to establish the existence of perfect self-defense during a killing:

> (1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

> (2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

> (3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

> (4) defendant did not use excessive force, i.e. did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Cruz*, 203 N.C. App. 230, 236, 691 S.E.2d 47, 51 (2010), (citation omitted). Imperfect self-defense is established if the first two elements are present at the time of the killing, but the defendant was the aggressor or used excessive force. *State v. Revels*, 195 N.C. App. 546, 551, 673 S.E.2d 677, 681 (2009) (quoting *State v. Lyons*, 340 N.C. 646, 661, 459 S.E.2d 770, 778 (1995)).

Defendant argues that the evidence established a "perfect self-defense" that required a verdict of not guilty and therefore the conviction must be reversed. In essence, defendant argues that the four elements necessary for a perfect self-defense and to justify the killing were present at the time he killed Brandon. Defendant contends there is evidence to show that 1) he believed it necessary to kill, 2) his belief was reasonable, 3) he was not the aggressor, and 4) he did not use excessive force. While there may be some evidence favorable to defendant as to each of the elements, there is also evidence favorable to the State to show that defendant's belief that it was necessary to kill was not reasonable, and that defendant was the aggressor or used excessive force. Therefore, contrary to defendant's contentions, the State did present sufficient evidence to permit a reasonable jury to find that defendant was not acting in perfect self-defense.

The test on a motion to dismiss is whether the State has presented substantial evidence which, when taken in the light most favorable to the State, would be sufficient to convince a rational trier of fact that the defendant did not act in self-defense. *State v. Gilreath*, 118 N.C. App. 200, 208, 454 S.E.2d 871, 876 (1995) (citation omitted).

We therefore consider the evidence in the light most favorable to the State that shows defendant did not act in perfect self-defense. Here, the evidence tends to show that Brandon approached defendant from behind as they both walked down the road after an earlier altercation, the last one resulting in Brandon receiving a bloody, swollen lip as a result of defendant's punch. Defendant was carrying a chef's knife with an 8-inch blade. The State presented evidence tending to show that Brandon was unarmed despite defendant's allegations that Brandon first swung at him with a vaguely described, unidentifiable object. No object fitting the description defendant gave was discovered at the scene, and no witnesses observed anything other than a t-shirt in Brandon's hand. Under the circumstances of this encounter, the lack of an object, in conjunction with a lack of physical injury to any part of defendant's body, except blood on the knuckle of his right hand, supports the State's contention that defendant's belief was not reasonable.

Defendant also asserts that during the fight Brandon held him in a chokehold and held his head under water, and so at the time he had the reasonable belief that it was necessary to kill Brandon to save himself from death or bodily harm. However, in the light most favorable to the State, other evidence shows that although defendant's head and body were wet, it had been raining steadily that evening, such that six to twelve inches of water had collected beside the road. There was further evidence to show that defendant and Brandon were seen fighting from one side of the road to the other, that someone crossed the road, picked up something and came back to join the fight. Viewing that evidence in the light most favorable to the State, a jury could find that defendant went across the road, retrieved his chef's knife from his bag and went back to join the fight with Brandon who did not possess a weapon of any kind. Such evidence was sufficient for a jury to determine not only that defendant's belief was not reasonable but that defendant was the aggressor.

Further, the lack of injuries to defendant, compared to the nature and severity of the wounds on Brandon at his death, is sufficient evidence from which a jury could find that defendant was the aggressor or that defendant used excessive force. There was evidence - testimony and photographs showing that, other than blood on his right knuckle, defendant had no visible injuries to his body: No injuries to his arms, forearms, back, chest, abdomen or legs. Neither photographs nor testimony depicted any injury to the top of his head, nor were there injuries to his knees. Brandon, on the other hand, had lacerations to his head, face, neck, chest, right and left shoulder, and lower body - his internal organs were hanging out when his body was found face down in 6 to 12 inches of water on the shoulder of the road two blocks from the bar. He had 33 knife wounds, and had bled to death. This evidence alone is sufficient to allow a jury to find that defendant was the aggressor and that defendant used excessive force. Viewing the evidence in the light most favorable to the State, it is sufficient to show defendant did not act in perfect self-defense. The trial court did not err in denying defendant's motion to dismiss.

## II. Jury Instruction

[2] Defendant next argues that the trial court committed reversible error when it instructed the jury that defendant would lose the right to self-defense if he was the aggressor, because the State failed to put forth evidence that defendant was the aggressor. We find this argument without merit.

Because defendant failed to object to the jury instructions at trial, this issue must be reviewed for plain error. *State v. Pate*, 187 N.C. App. 442, 445, 653 S.E.2d 212, 215 (2007) (citation omitted).

> [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Lawrence*, 365 N.C. 506, 516-17, 723 S.E.2d 326, 333 (2012) (citation, quotations, and brackets omitted).

Defendant bases this claim on similar grounds as those stated in his first argument, arguing that there is insufficient evidence to support the finding that defendant was in any way the aggressor in the fatal confrontation. But, as we have set forth above, the State did put forth sufficient evidence from which a reasonable jury could find that defendant was the aggressor or used excessive force. Accordingly, we find no error with the jury instruction explaining that defendant was not entitled to perfect self-defense if he was found to be the aggressor.

### III. Jury Request to Review Testimony

[3] Defendant's final contention is that the trial court erred when it denied the jury's request to review the testimony of security guard, Donnie Fox. We disagree.

Upon a request by the jury to review evidence or hear certain testimony, "[t]he judge in his discretion . . . may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence." N.C. Gen. Stat. §15A-1233(a) (2011).

The trial court must uphold its duty to "exercise its discretion in determining whether to permit requested evidence to be read to or examined by the jury together with other evidence relating to the same factual issue." *State v. Hinton*, ___ N.C. App. ___, ___, 738 S.E.2d 241,

248 (2013) (quoting *State v. Ashe*, 314 N.C. 28, 34, 331 S.E.2d 652, 656 (1985)). When a court denies a jury's request to review a transcript on the ground that it has no discretion to grant the request, the assignment of error is preserved regardless of whether defendant timely objects. *State v. Starr*, 365 N.C. 314, 317, 718 S.E.2d 362, 365 (2011). It is "the well-settled rule that a trial court does not exercise its discretion when, as evidenced by its response, it believes it cannot comply with the jury's transcript request." *Id.* at 318, 718 S.E.2d at 366. However, defendant has the burden to show that any error was prejudicial, that there exists "a reasonable possibility that, had the error in question not been committed, a different result would have been reached . . . ." *Id.* at 319, 718 S.E.2d at 366 (citation omitted).

Here, after the jury deliberated for a brief time, it sent a note to the judge requesting to be allowed to review photographs introduced into evidence at trial and to review the testimony of Donnie Fox, the bouncer and head of security at the bar the night of the confrontation. After agreeing to grant the request to see the photographs, the judge stated to the attorneys, "[a]s to Mr. Fox's testimony, that was not recorded and is not available to be given to them so that is what I am going to—read that to them." The judge then called the jury back into court and instructed them to recall the requested testimony on their own.

Defendant argues the trial court's failure to articulate that the decision to not allow the jury to review the witness's testimony was made at its discretion, was error. Assuming without deciding that the trial court's actions amount to error, we determine whether the actions prejudiced defendant or constituted harmless error. *See id.*

Fox testified that in his role as head of security, he stepped in to break up the initial altercation between defendant and his cousin Jessica, and broke up the fights between defendant and Brandon. As a result of the altercations, he asked both defendant and Brandon to leave the bar. At some point later, defendant left and Brandon followed him down the road. From a distance, through the darkness and rain, Fox witnessed some of the encounter. All he could see were silhouettes; he noted that the bodies were "locked up" fighting and moved from the west side to the east side of the road; that they were splashing around as he could see water splashing up around them. He could not specifically identify either silhouette, but he did see one run back across the road, lean over and do something, then run back to the middle of road where the other silhouette had run to meet him. Later, he saw someone again cross the road, pick up an object and walk north on the road.

**STATE v. PRESSON**

[229 N.C. App. 325 (2013)]

Defendant argues that Fox's testimony is material to the determination of whether defendant was the aggressor or used excessive force during the encounter and therefore, the trial court erred to defendant's prejudice in not allowing the jury to review the testimony. We disagree.

Defendant relies on *State v. Lang*, 301 N.C. 508, 272 S.E.2d 123 (1980), to support his argument. In *Lang*, our Supreme Court held the trial court's ruling that it lacked discretion to grant the jury's request to have transcript testimony read aloud was an error of law. And, as the requested transcript testimony was material to the defendant's alibi defense and in direct conflict with the State's evidence, the trial court's ruling was prejudicial. *Id.*

Here, the testimony of Cox was not material to defendant's guilt or innocence. In addition to Cox, several witnesses testified that Brandon was acting aggressively toward defendant, and that Brandon followed defendant down the road. They also testified to not seeing anything in Brandon's hand other than his t-shirt. The remaining testimony of Cox regarding the movement of the silhouettes he observed, if believed, would tend to show that defendant did not act in perfect self-defense, that in fact defendant became the aggressor and that he used excessive force. Therefore, unlike in *Lang*, the testimony in the instant case tended to show defendant's guilt as opposed to his innocence.

Additionally, we find that the trial judge instructed the jury, "it is your duty to recall and consider all evidence that has been introduced in this trial." Therefore, any error in the trial court's denial of the jury's request to review testimony is harmless.

From our review of the record and the issues raised on appeal, we determine that defendant received a trial free of prejudicial error.

No prejudicial error.

Judges STEPHENS and DILLON concur.