DILLON, Judge.
 

 *113
 
 Joanna Roberta Madonna ("Defendant") appeals from judgment entered upon a jury verdict finding her guilty of first-degree murder.
 

 I. Background
 

 Defendant and Jose Perez ("Mr. Perez") met in 2008 and were married in 2009. In June 2013, Mr. Perez was killed during an altercation with Defendant. At trial, Defendant proceeded on a theory of self-defense.
 

 Mr. Perez and Defendant were the only individuals at the scene of the altercation. Because Mr. Perez did not live to tell his version of events, Defendant's account of the altercation was the only direct evidence available at trial. Defendant testified to her version of events as follows: While driving in a car with Mr. Perez, Defendant told Mr. Perez that she wanted a divorce. Mr. Perez responded by saying that he would kill himself if she left him. Mr. Perez then clutched his chest, claimed that he was going to have a heart attack, and asked Defendant to pull over. After Defendant pulled the car over, she got out of the car to help Mr. Perez, but before she was able to reach the passenger door of the car, she heard a gunshot. Mr. Perez pointed the gun at Defendant and himself, and when Defendant attempted to take the gun from Mr. Perez, it went off and shot him in the face. Defendant dropped the gun, got back in the car, and began driving toward the VA hospital. Mr. Perez again started clutching
 
 *114
 
 his chest and asking Defendant to pull over. When she again got out of the car to check on him, Mr. Perez jumped out of the car and knocked Defendant over, crushing her with his body weight. Defendant became concerned that Mr. Perez was going to choke her to death. Defendant saw a knife on the ground and "started swinging at [Mr. Perez]" until he was no longer holding her down. Defendant testified that at that point, she thought Mr. Perez would still be able to get up, so Defendant threw the knife in the woods, removed Mr. Perez's shoes so he could not chase her, and left the scene.
 

 The State presented considerable circumstantial evidence which tended to contradict Defendant's version of events. Following the trial, the jury convicted Defendant of first-degree murder. Defendant timely appealed.
 

 II. Analysis
 

 On appeal, Defendant contends that the trial court erred in (1) denying her motions to dismiss, (2) denying her motion for mistrial and failing to intervene
 
 ex mero motu
 
 where the prosecutor made grossly improper remarks during closing argument, and (3)
 

 *360
 
 allowing inadmissible and prejudicial witness testimony. We address each argument in turn.
 

 A. Motions to Dismiss
 

 Defendant first argues that the trial court erred in denying her motions to dismiss at the close of the State's evidence and the close of all evidence. On appeal, Defendant contends that (1) the State failed to present substantial evidence of premeditation and deliberation, and (2) the State failed to present substantial evidence from which the jury could reasonably conclude that Defendant did
 
 not
 
 act in self-defense.
 

 We review the trial court's denial of a motion to dismiss for insufficiency of the evidence
 
 de novo
 
 .
 
 State v. Barnett
 
 ,
 
 368 N.C. 710
 
 , 713,
 
 782 S.E.2d 885
 
 , 888 (2016).
 

 When considering a motion to dismiss for insufficiency of evidence, the court is concerned only with the legal sufficiency of the evidence to support a verdict, not its weight, which is a matter for the jury. The evidence must be considered in the light most favorable to the state; all contradictions and discrepancies therein must be resolved in the state's favor; and the state must be given the benefit of every reasonable inference to be drawn in its favor from the evidence. There must be substantial evidence of all elements of the crime charged, and that the defendant was the perpetrator of the crime.
 

 *115
 

 Id.
 

 (citations omitted). Substantial evidence is "relevant evidence that a reasonable mind might accept as sufficient to support a conclusion."
 
 State v. Allen
 
 ,
 
 346 N.C. 731
 
 , 739,
 
 488 S.E.2d 188
 
 , 192 (1997).
 

 1. Premeditation and Deliberation
 

 To establish the offense of first-degree murder, the State must show that the defendant unlawfully killed the victim with malice, premeditation, and deliberation.
 
 State v. Vause
 
 ,
 
 328 N.C. 231
 
 , 238,
 
 400 S.E.2d 57
 
 , 62 (1991). Premeditation is defined as "thought [ ] beforehand for some length of time, however short[.]"
 
 State v. Robbins
 
 ,
 
 275 N.C. 537
 
 , 542,
 
 169 S.E.2d 858
 
 , 861-62 (1969). Deliberation means that the act is done "in a cool state of the blood in furtherance of some fixed design."
 
 State v. Buffkin
 
 ,
 
 209 N.C. 117
 
 , 125,
 
 183 S.E. 543
 
 , 548 (1936). "The question as to whether or not there has been deliberation is not ordinarily capable of actual proof, but must be determined by the jury from the circumstances."
 
 Id.
 
 at 125,
 
 183 S.E. at 547
 
 . Factors to be considered in determining whether the defendant committed the crime after premeditation and deliberation include:
 

 (1) [W]ant of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.
 

 State v. Hamlet
 
 ,
 
 312 N.C. 162
 
 , 170,
 
 321 S.E.2d 837
 
 , 843 (1984).
 

 The following evidence relevant to the issue of premeditation and deliberation was presented at trial:
 

 Mr. Perez suffered from a heart condition and other ailments. In the months leading up to the June 2013 death of Mr. Perez, Defendant and Mr. Perez began arguing, mostly about financial issues. Defendant had begun a romantic relationship with her therapist and planned to ask Mr. Perez for a divorce.
 

 Pursuant to a search of a home computer, law enforcement discovered internet searches from March 2013 including "upon death of a veteran," "can tasers kill people," "can tasers kill people with a heart condition," "what is the best handgun for under $200," "death in absentia USA," and "declare someone dead if missing 3 years."
 

 *116
 
 On the day Mr. Perez was killed, Defendant visited her nephew, who was a gun enthusiast. While visiting, Defendant expressed concerns about her personal safety due to break-ins in her neighborhood, and her nephew gave her a gun and a knife. Shortly after being given these weapons, Defendant returned home and asked Mr. Perez to go on a drive with her so that she could ask him for a divorce. Defendant took both
 
 *361
 
 the gun and the knife with her in the car and used the weapons to kill Mr. Perez, shooting him and then stabbing him approximately twelve (12) times.
 

 Later in the day, after killing Mr. Perez, Defendant texted her therapist "it's almost done" and "it got ugly." Following Mr. Perez's death, Defendant disposed of her bloodstained clothing, threw away Mr. Perez's medications and identification, and maintained that Mr. Perez had either gone to Florida or was at a rehabilitation center.
 

 We hold that this evidence was relevant and constitutes substantial evidence that the killing of Mr. Perez was premeditated and deliberate.
 
 See
 

 id.
 
 at 170,
 
 321 S.E.2d at 843
 
 .
 

 2. Self-Defense
 

 When there is some evidence of self-defense, "[t]he burden is upon the State to prove beyond a reasonable doubt that the defendant did not act in self-defense[.]"
 
 State v. Herbin
 
 ,
 
 298 N.C. 441
 
 , 445,
 
 259 S.E.2d 263
 
 , 267 (1979). Thus, the test on a motion to dismiss is "whether the State has presented substantial evidence which, when taken in the light most favorable to the State, would be sufficient to convince a rational trier of fact that the defendant did
 
 not
 
 act in self-defense."
 
 State v. Presson
 
 ,
 
 229 N.C. App. 325
 
 , 329,
 
 747 S.E.2d 651
 
 , 655 (2013) (emphasis added).
 

 In addition to the evidence recounted above, the State presented the following evidence which tended to contradict Defendant's claim of self-defense: Mr. Perez was diabetic, had coronary heart disease, was a lung cancer survivor, and suffered from numerous physical disabilities, including nerve damage and atrophied hands that made it difficult for him to grasp objects. Doctors testified that it would be difficult for Mr. Perez to use a gun or grasp a knife, and that he was "relatively frail" and "moved slowly." The VA had approved a plan to equip Mr. Perez and Defendant's home with a wheelchair lift, ramps, a bathroom modification, and special doorknobs in order to accommodate Mr. Perez's disabilities. In contrast, Defendant was physically active, sang in a band, and worked as a house cleaner and in a law office doing filing. Defendant had superficial injuries inconsistent with her account of a violent struggle. Defendant's therapist testified that Defendant showed
 
 *117
 
 him "knife wounds" on her arms that in fact looked like scratches, not cuts.
 

 Further, when viewed in the light most favorable to the State, the evidence tends to show that even after Mr. Perez had been wounded twice by gunshots, Defendant stabbed him twelve (12) times. And Defendant suffered minimal injuries compared to the nature and severity of the injuries sustained by Mr. Perez.
 
 See
 

 id.
 
 at 330,
 
 747 S.E.2d at 656
 
 .
 

 In conclusion, regardless of whether Defendant may have presented evidence which tended to contradict the State's evidence on the issue of self-defense, we conclude that the State presented substantial evidence that Defendant did
 
 not
 
 act in self-defense. Accordingly, we conclude that the trial court did not err in denying Defendant's motion to dismiss the charge of first-degree murder.
 

 B. Closing Argument
 

 Defendant's second set of arguments relates to statements made by the prosecutor during closing argument.
 

 Counsel is generally allowed wide latitude in argument to the jury.
 
 State v. Huffstetler
 
 ,
 
 312 N.C. 92
 
 , 112,
 
 322 S.E.2d 110
 
 , 123 (1984). Counsel for both sides is permitted to argue to the jury "the facts in evidence and all reasonable inferences to be drawn therefrom together with the relevant law so as to present his or her side of the case."
 

 Id.
 

 However, during a closing argument, an attorney may
 
 not
 
 "become abusive, inject his personal experiences, [or] express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant[.]" N.C. Gen. Stat. § 15A-1230(a) (2015).
 

 Defendant first contends that the prosecutor was abusive in her closing argument when she stated that Defendant "can't keep her knees together or her mouth shut." Defendant moved for a mistrial immediately following the prosecutor's closing argument on the grounds that this statement was inappropriate and violated Defendant's due process
 
 *362
 
 rights. The trial court noted Defendant's objection for the record but denied the motion for mistrial.
 

 We review a trial court's denial of a motion for mistrial for abuse of discretion.
 
 State v. McCarver
 
 ,
 
 341 N.C. 364
 
 , 383,
 
 462 S.E.2d 25
 
 , 36 (1995). The grant of a mistrial is a "drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict."
 
 State v. Stocks
 
 ,
 
 319 N.C. 437
 
 , 441,
 
 355 S.E.2d 492
 
 , 494 (1987).
 

 *118
 
 We conclude that the prosecutor's statement that Defendant "can't keep her knees together or her mouth shut" was improperly abusive.
 
 See
 
 N.C. Gen. Stat. § 15A-1230(a). However, we do not believe this comment alone-or even this comment coupled with the other comments by the prosecutor discussed below-made it impossible for Defendant to obtain a fair trial and impartial verdict, and thus did not require that the trial court impose the "drastic remedy" of granting Defendant's motion for mistrial.
 

 Defendant also contends that during her closing argument, the prosecutor repeatedly made inappropriate comments that Defendant was a liar, had lied on the stand, was promiscuous, had previously had abortions, and currently abused drugs.
 

 Control of counsel's arguments is left largely to the discretion of the trial court.
 
 State v. Alston
 
 ,
 
 341 N.C. 198
 
 , 239,
 
 461 S.E.2d 687
 
 , 709 (1995). "When no objections are made at trial ... the prosecutor's argument is subject to limited appellate review for gross improprieties which make it plain that the trial court abused its discretion in failing to correct the prejudicial matters
 
 ex mero motu
 
 ."
 

 Id.
 

 Our review requires a two-step inquiry: "(1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial."
 
 State v. Huey
 
 , --- N.C. ----, ----,
 
 804 S.E.2d 464
 
 , ---- (2017).
 

 In order to determine whether a prosecutor's remarks are grossly improper, "the remarks must be viewed in context and in light of the overall factual circumstances to which they refer."
 

 Id.
 

 An argument is not improper "when it is consistent with the record and does not travel into the fields of conjecture or personal opinion."
 
 State v. Small
 
 ,
 
 328 N.C. 175
 
 , 184-85,
 
 400 S.E.2d 413
 
 , 419 (1991).
 

 An attorney may not express any "personal belief as to the truth or falsity of the evidence" during closing argument. N.C. Gen. Stat. § 15A-1230(a). Our Supreme Court has held that it is improper for an attorney to assert during argument to the jury that a witness is lying on the stand or is a liar.
 
 State v. Sexton
 
 ,
 
 336 N.C. 321
 
 , 363,
 
 444 S.E.2d 879
 
 , 903 (1994) ("It is improper for the district attorney, and defense counsel as well, to assert in his argument that a witness is lying. He can argue to the jury that they should not believe a witness, but he should not call him a liar.
 
 State v. McKenna
 
 ,
 
 289 N.C. 668
 
 , 686,
 
 224 S.E.2d 537
 
 , 550 (1976) [.]");
 
 see also
 

 Huey
 
 , --- N.C. at ----, 804 S.E.2d at ---- ("A prosecutor is not permitted to insult a defendant or assert the defendant is a liar."). Our Supreme Court has recently held that it was improper for a prosecutor, when referring to the defendant, to state that "innocent men don't lie,"
 

 *119
 
 and to assert that when the defendant "was given a chance to just tell [the jury] the truth, he decided he's going to tell you[, the jury,] whatever version he thought would get you to vote not guilty."
 
 Huey
 
 , --- N.C. at ----, 804 S.E.2d at ----.
 

 However, an attorney
 
 may
 
 "argue to the jury that they should not believe a witness[.]"
 

 Id.
 

 "The question of whether a witness is telling the truth is a question of credibility and is a matter for the jury alone."
 
 State v. Solomon
 
 ,
 
 340 N.C. 212
 
 , 221,
 
 456 S.E.2d 778
 
 , 784 (1995).
 

 Here, Defendant contends that the prosecutor made numerous inappropriate statements to the jury, including:
 

 This defendant talks and talks and out comes falsehood, deception, distortion, and fabrication. She stood before you and put her hand on the bible, and she swore to tell the truth, ... [a]nd then she sat in that chair and testified, [ ] and
 
 every time her lips moved another monstrous lie came out
 
 .
 

 She has been untruthful to you.
 

 *363
 
 She was dishonest then, and she's been dishonest now.
 

 How could she think you could possibly believe any of the evil fairytale she has told you?
 

 Although Defendant did admit on the stand that she had lied numerous times
 
 in the past
 
 , we are compelled by Supreme Court precedent to conclude that these statements, in which the prosecutor specifically stated that Defendant lied to the jury
 
 while testifying at trial
 
 , were clearly improper.
 
 See
 

 Huey
 
 , --- N.C. at ----, 804 S.E.2d at ---- ;
 
 Couch v. Private Diagnostic Clinic
 
 ,
 
 351 N.C. 92
 
 , 93,
 
 520 S.E.2d 785
 
 , 785 (1999) (holding that counsel engaged in grossly improper jury argument where the argument included "at least nineteen explicit characterizations of the defense witnesses and opposing counsel as liars");
 
 State v. Locklear
 
 ,
 
 294 N.C. 210
 
 , 217,
 
 241 S.E.2d 65
 
 , 70 (1978) ("It is improper for a lawyer to assert his opinion that a witness is lying.");
 
 see also
 
 R. Prof. Conduct N.C. St. B. 3.4(e) (providing that a lawyer
 
 shall not
 
 "state a personal opinion as to the ... credibility of a witness"). The prosecutor also improperly referred to Defendant as a "narcissist."
 
 See
 

 State v. Matthews
 
 ,
 
 358 N.C. 102
 
 , 111,
 
 591 S.E.2d 535
 
 , 541-42 (2004) (holding that it was improper for the prosecutor to engage in "name-calling").
 

 However, our Supreme Court has noted that where there is overwhelming evidence against a defendant, statements that are improper
 
 *120
 
 may not, in every case, amount to prejudice and reversible error.
 
 Huey
 
 , --- N.C. at ----, 804 S.E.2d at ---- (citing
 
 Sexton
 
 ,
 
 336 N.C. at 363-64
 
 ,
 
 444 S.E.2d at
 
 903 ). "To demonstrate prejudice, defendant has the burden to show a 'reasonable possibility that, had the error[s] in question not been committed, a different result would have been reached at the trial.' "
 
 Huey
 
 , --- N.C. at ----, 804 S.E.2d at ---- ; N.C. Gen. Stat. § 15A-1443(a)(2015).
 

 In this case, considering the overwhelming evidence of Defendant's guilt, we hold that although some of the prosecutor's remarks were certainly improper, they did not render the trial and conviction fundamentally unfair.
 
 See
 

 Huey
 
 , --- N.C. at ----, 804 S.E.2d at ---- (stating that in order for an appellate court to order a new trial, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process") (internal marks omitted);
 
 see also
 

 State v. Garcell
 
 ,
 
 363 N.C. 10
 
 , 61,
 
 678 S.E.2d 618
 
 , 650 (2009). Therefore, the trial court did not err in failing to intervene
 
 ex mero motu
 
 .
 
 See
 

 State v. Campbell
 
 ,
 
 359 N.C. 644
 
 , 679,
 
 617 S.E.2d 1
 
 , 23 (2005) (noting that, even if the prosecutor's comments in closing argument were improper, "the jury instructions informed the jury not to rely on the closing arguments as their guide in evaluating the evidence[,]" and "when viewed as a whole ... the prosecutor's challenged arguments did not so infuse the proceeding with impropriety as to impede defendant's right to a fair trial").
 

 As our Supreme Court has stated:
 

 The power and effectiveness of a closing argument is a vital part of the adversarial process that forms the basis of our justice system. A well-reasoned, well-articulated closing argument can be a critical part of winning a case. Yet, arguments, no matter how effective, must avoid base tactics such as ... comments dominated by counsel's personal opinion; [and] ... name-calling[.] ... Our holding here, and other similar holdings finding no prejudice in various closing arguments, must not be taken as an invitation to try similar arguments again. We, once again, instruct trial judges to be prepared to intervene
 
 ex mero motu
 
 when improper arguments are made.
 

 Huey
 
 , --- N.C. at ----, 804 S.E.2d at ---- (internal marks and citation omitted).
 

 C. Witness Testimony
 

 In her final argument, Defendant contends that the trial court erred when it allowed improper witness testimony. The decision to admit
 
 *121
 
 or exclude evidence is within the inherent authority of the trial court, and is thus reviewed under the abuse of discretion standard.
 
 See
 

 State v. Triplett,
 

 368 N.C. 172
 
 , 178,
 
 775 S.E.2d 805
 
 , 808-09 (2015).
 

 First, Defendant contends that the trial court should not have allowed evidence of a statement she made to police when they came to her residence to investigate Mr.
 
 *364
 
 Perez's death. Specifically, Defendant argues that her statement that she had already contacted an attorney was constitutionally protected.
 
 See
 

 State v. Erickson
 
 ,
 
 181 N.C. App. 479
 
 , 487,
 
 640 S.E.2d 761
 
 , 768 (2007) (noting that it is improper for the prosecutor to elicit "testimony regarding the defendant's invocation of his constitutional rights"). On appeal, Defendant points to the prosecutor's question regarding this statement during cross-examination of Defendant; however, this evidence was also admitted without objection earlier in the trial during the testimony of a detective. Accordingly, Defendant failed to preserve this objection for appellate review.
 
 See
 

 State v. Whitley
 
 ,
 
 311 N.C. 656
 
 , 661,
 
 319 S.E.2d 584
 
 , 588 (1984) ("[W]here evidence is admitted over objection, and the same evidence has been previously admitted ... without objection, the benefit of the objection is lost.").
 

 Defendant also contends that the trial court abused its discretion in overruling defense counsel's objection to the prosecutor's question regarding whether Defendant had terminated two pregnancies. However, Defendant later admitted, without objection, that she had written a letter to a Catholic priest during her time in jail which included the phrase "I got pregnant twice and had two abortions." Therefore, Defendant has waived her right to challenge the admission of this evidence on appeal.
 
 See
 

 State v. Moses
 
 ,
 
 316 N.C. 356
 
 , 362,
 
 341 S.E.2d 551
 
 , 554-55 (1986) ("[W]hen evidence is admitted over objection but the same evidence is thereafter admitted without objection, the benefit of the objection ordinarily is lost."). During cross-examination, Defendant admitted that she had written the letter and that it contained the statement regarding the abortions.
 
 See e.g.,
 
 id.
 

 Finally, Defendant contends that it was error for the trial court to allow testimony from her therapist and a detective about a statement made by her therapist that Defendant told him she had married Mr. Perez because he had cancer and would be dying soon. Even assuming that it was an abuse of discretion to admit this evidence, Defendant has failed to establish that she was prejudiced by its admission in light of other overwhelming evidence of Defendant's guilt of the crime of first-degree murder.
 
 See
 
 N.C. Gen. Stat. § 15A-1443(a) ("A defendant is prejudiced ... when there is a reasonable possibility that, had the error in question not
 
 *122
 
 been committed, a different result would have been reached at trial[.]"). Accordingly, this argument is overruled.
 

 NO PREJUDICIAL ERROR.
 

 Judge ZACHARY concurs.
 

 Judge BERGER concurs by separate opinion.
 

 BERGER, Judge, concurring in separate opinion.
 

 I fully concur with the majority opinion, but write separately to address the prosecutor's statements regarding Defendant's "evil fairytale" and other conjured facts.
 

 Pursuant to N.C. Gen. Stat. § 15A-1230, an attorney is not permitted to
 

 express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, ... [but a]n attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.
 

 N.C. Gen. Stat. § 15A-1230(a) (2015).
 

 While on the stand, Defendant testified as follows:
 

 I made up-I lied to [my daughter]. I lied to [my daughter]. I lied to [my daughter]. And I believe that I said that yesterday. I told [my daughter] whatever I needed to tell her to get her to be quiet. Yes, I lied to [my daughter].
 

 ....
 

 And I did lie to [my defense attorney]. I did not give him all the information either. ... Yes, I did. I lied to him and told him that the gun was at the same place where Jose was.
 

 ....
 

 Yes. That was a lie. I told everybody that lie. [Answer to question concerning Jose's whereabouts after she killed him].
 

 ....
 

 *123
 
 No. I had lied and said I was going to a meeting, and I sat there in [his] living
 
 *365
 
 room while he was watching golf and-I'm sorry.
 

 ....
 

 I lied to the police. I lied to my children. I lied to everybody.
 

 In a letter written from jail, Defendant admitted, "I lied to everyone around me. I lied to my children .... I lied to my friends about money. ... I lied to fellow inmates." Further, in summarizing the evidence against his client, defense counsel made the following statements in closing, "She did-took some stupid actions to lie to people. She took some stupid actions to lie to people. ... She's just lying."
 

 What do you call someone who testifies that they have lied "to everybody"? It is difficult for me to conclude that an attorney should be precluded from asserting that a defendant has been untruthful when the defendant testifies she "lied to everybody" and her defense attorney acknowledges that truth.
 
 [1]
 

 There will certainly be more murders. Just as certainly, there will be defendants who manufacture stories in an effort to conceal their involvement in criminal activity. And, while it is permissible to label those defendants as "killers," prosecutors are forbidden from asserting they are dishonest.
 

 [1]
 

 Interestingly, defense counsel argued to the jury that the victim in this case was a liar, not only asserting that he was untruthful, but stating, "She knew what kind of lies [Jose] was telling," and "It wasn't-it was the final straw to separate her from that relationship, not just to show you that Jose was lying about stuff but just where her mindset was."