An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-386

Filed 18 March 2026

Guilford County, No. 21CR070431-400

STATE OF NORTH CAROLINA

v.

THOMAS WILLIAM MITCHELL, Defendant.

Appeal by defendant from judgment entered 31 May 2024 by Judge Michael D. Duncan in Guilford County Superior Court. Heard in the Court of Appeals 29 October 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney Generals Daniel P. O'Brien and Keith T. Clayton, for the State-appellee.*
>
> *Christopher J. Heaney for defendant-appellant.*

GORE, Judge.

Defendant Thomas William Mitchell appeals the judgment entered against him for voluntary manslaughter. Defendant appeals of right pursuant to N.C.G.S. § 15A-1444(a). Upon reviewing the briefs and the record, we discern no error.

**I.**

On the evening of 21 March 2021, defendant was at Ucola Whitworth's house

with Whitworth and the decedent, Keith Shepard, drinking beer and smoking marijuana around a fire-pit, as was common for them to do. Defendant and the decedent knew each other since 2018 and would often spend time together at Whitworth's home. On that evening, Whitworth went inside and only defendant and decedent remained. Defendant stabbed decedent three times, dragged his body to the back of Whitworth's home, and told Whitworth he stabbed decedent. A neighbor testified she saw a man bending over decedent yelling multiple times "You're gonna respect me now" prior to dragging the body up the driveway. Whitworth attempted to revive decedent and called 911. Defendant left before the police arrived. The decedent was declared dead at the scene and defendant was arrested at his sister's home.

Defendant was indicted for first-degree murder, pled not guilty, and asserted a self-defense claim. At trial, defendant testified the decedent had attacked him a couple weeks prior to the 21 March altercation. Defendant testified he believed the decedent had a grudge against him after that prior incident. Defendant testified on the night of 21 March, once Whitworth went inside and defendant and the decedent were alone, defendant was walking off the porch when the decedent punched the back of his head. Defendant testified the decedent continued to punch him and he thought the decedent would beat him to death. Defendant testified he feared for his life and felt he had no other option but to pull out the knife in his pocket to protect himself from the decedent. He swung at the decedent with the knife and the decedent

collapsed. Defendant testified he pulled the decedent's body closer to Whitworth's house to see what happened to him and did not see any blood on the decedent. He testified he attempted to resuscitate the decedent before calling Whitworth; he further testified he left for his sister's house because he was in a state of panic.

The medical examiner testified decedent's death was caused by a stab wound to the chest. Additionally, the medical examiner testified the decedent had a "blunt force" head injury, two other stab wounds, and no injury on his hands. Law enforcement officers took photos of defendant after the altercation; these were admitted into evidence and depicted defendant without any obvious injuries and with clean clothing.

During closing arguments, the State pointed to a garden hoe in one of the admitted photos of the scene and inferred defendant first hit the decedent on the head with the garden hoe prior to stabbing him multiple times. The State also argued that the direction of the stabbings, according to the medical examiner report, showed the wounds were in a downward direction and that this indicated how defendant attacked the decedent. Defendant moved for a mistrial based on the State's closing remarks; the trial court denied his motion.

The State sought and was granted inclusion of the aggressor doctrine alongside the self-defense instruction for the jury instructions. Defendant objected to the inclusion of the aggressor doctrine but was overruled. The trial court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter, and

imperfect self-defense. The jury returned a guilty verdict for voluntary manslaughter, and the trial court sentenced defendant to 128 to 166 months' imprisonment. Defendant timely appealed the judgment.

## II.

Defendant seeks review of the following issues: (1) Whether the trial court erred by instructing the jury on the aggressor doctrine and its impact on defendant's perfect self-defense claim; (2) whether the trial court erred by denying defendant's motion for a mistrial because of the State's closing argument; and (3) whether the trial court erred by not intervening during the State's closing argument concerning improper use of evidence. Defendant properly preserved each issue for appellate review; therefore, we consider each issue in turn.

## A.

First, defendant seeks review of the trial court's inclusion of the aggressor doctrine in the jury instructions. Defendant argues the trial court's instruction that he could not act in perfect defense if he were the aggressor misled the jury because there was no evidence to support inclusion of the aggressor instruction. According to defendant, the trial court should only include the aggressor instruction if there was a "reasonable view of the evidence" to support the theory he was the aggressor according to *State v. Lampkins*. 283 N.C. 520, 523 (1973). Conversely, the State argues there was evidence to support inclusion of the aggressor instruction. The State refers to *State v. Hicks* to argue the trial court properly included the instruction

because a mere inference from the evidence that defendant was the aggressor, is adequate to justify its inclusion. 385 N.C. 52, 60–61 (2023). We review preserved objections to jury instructions de novo. *State v. Richardson*, 270 N.C. App. 149, 152 (2020).

Deadly force in the form of self-defense is justified in limited circumstances. *See* N.C.G.S. §§ 14-51.3, 14-51.2 (2020). This justification gives way when evidence suggests that the person claiming self-defense is an aggressor. *See* N.C.G.S. § 14-51.4 (2020). The aggressor doctrine is appropriately included in jury instructions when someone "aggressively and willingly enters into a fight without legal excuse or provocation." *State v. Wynn*, 278 N.C. 513, 519 (1971). "Someone who did not instigate a fight may still be the aggressor if they continue to pursue a fight that the other person is trying to leave." *Hicks*, 385 N.C. at 60 (cleaned up). The aggressor instruction must be given by the court when requested "if it is correct in itself and supported by the evidence. When the evidence is conflicting, it is for the jury to determine whether the defendant was the aggressor." *Id.* "When there is no evidence that a defendant was the initial aggressor, it is reversible error for the trial court to instruct the jury on the aggressor doctrine of self-defense." *State v. Juarez*, 369 N.C. 351, 358 (2016).

In the present case, defendant argues there was no evidence to support inclusion of the aggressor doctrine. However, the record includes the following evidence: photos of defendant right after the incident showing defendant without any

physical injury, defendant wearing clean clothes along with testimony he did not change after the incident, the decedent's clothes were blood stained and ripped, no injury to the decedent's hands, three stab wounds and a blunt-force trauma injury on the decedent's head, and testimony by a neighbor who saw defendant standing over decedent's body repeatedly yelling that the decedent would respect him.

Defendant testified the decedent attacked him from the back and continuously punched defendant while he was on the ground, but this evidence was contradicted by the photos of defendant with no signs of physical harm after the alleged attack. When viewing this evidence in the "light most favorable to the State," this evidence is sufficient or at least conflicting enough for the jury to hear and decide whether defendant was the aggressor. *Hicks*, 385 N.C. at 61; *cf. State v. Presson*, 229 N.C. App. 325, 330 (2013) (discussing the "nature and severity" of the decedent's wounds compared to the defendant's absence of injuries as evidence that the jury could rely upon to determine that the defendant was the aggressor). Accordingly, the trial court did not err by including the aggressor doctrine in the jury instructions.

**B.**

Second, defendant argues the trial court erred by denying his motion for a mistrial after the State argued in its closing that it could be inferred that defendant struck the decedent with a garden hoe. We review the denial of a motion for mistrial for abuse of discretion. *State v. Burgess*, 271 N.C. App. 302, 306 (2020). "The decision to grant or deny a mistrial lies within the sound discretion of the trial court and is

entitled to great deference since the trial court is in a far better position than an appellate court to determine the effect of any misconduct on the jury." *State v. Taylor*, 362 N.C. 514, 538 (2008) (cleaned up). "Mistrial is a drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict." *State v. Stocks*, 319 N.C. 437, 441 (1987).

The State made the following statements that triggered defendant's motion for mistrial as it relates to the garden hoe:

> In State's Exhibit 47 is a hoe. This was present at the scene near the fire where they were all sitting around drinking. I would contend a reasonable inference is that this defendant got up and hit [the decedent] in the head. He has a very distinct blunt force trauma to the side of his head. When he hit him, besides the fact that he was impaired, he was stunned, he went down. And when he went down, the defendant walks up behind him with his knife and plunges it into him and then plunges it into him again.

Defendant argues that there was no testimony that the admitted photo had a garden hoe in it. He argues there was no testimony that defendant attacked the decedent with the garden hoe or that the decedent's head injuries were incurred by blunt force from the garden hoe. Defendant argues that such statements went beyond "reasonable inferences" and misled the jury to speculate and make assumptions based upon unsupported evidence. We disagree.

In the present case, the trial court considered defendant's motion and ultimately denied it. The trial court reasoned the State utilized the evidence to build reasonable inferences and the State's argument about the garden hoe was to argue

motive. It articulated the State's inferences were based upon photographs presented at trial. The trial court also stated it would remind the jurors that what the attorneys say is not evidence but is instead intended to assist the jury in evaluating the evidence. Having considered the State's argument and the trial court's discretionary denial, we conclude the trial court did not abuse its discretion by denying the motion for mistrial. Defendant's argument is without merit.

**C.**

Third, defendant argues the trial court erred by not intervening upon his objection during the State's closing arguments. Defendant argues he objected and preserved this argument while the State argues defendant only objected contemporaneously to the State's comments regarding the stab wounds but did not object timely to the comments about the garden hoe. Upon review we determine defendant preserved this argument for review when he objected and stated, "She's talking about things outside of the four box, I mean, just – THE COURT: Objection is overruled."

We review preserved objections to closing arguments for abuse of discretion. *State v. Walters*, 357 N.C. 68, 101 (2003). "Application of the abuse of discretion standard to closing argument requires this Court to first determine if the remarks were improper. Next, we determine if the remarks were of such a magnitude that their inclusion prejudiced defendant, and thus should have been excluded by the trial court." *Id.* (cleaned up). "Trial counsel is allowed wide latitude in his argument to

the jury and may argue the law and the facts in evidence and all reasonable inferences drawn from them." *State v. Craig*, 308 N.C. 446, 454 (1983) (cleaned up).

In the present case, defendant argues the State's argument discussing the garden hoe in Exhibit #47 and the State's discussion of the trajectory of the knife stabbing required the court's intervention. Defendant argues the State went beyond reasonable inferences when it argued defendant used the garden hoe to hit the decedent on the head, followed by stabbing him once the decedent fell from the impact. In the record, the transcript reveals the State admitted Exhibit #47 to give "a relational photograph showing the fire pit in the foreground and the trash can in the background." We agree that the State's inference that the garden hoe was used to attack the decedent was beyond the scope of what was admitted into evidence. These remarks were improper.

But these remarks were not of such magnitude that they prejudiced defendant and should have been excluded by the trial court. *See Walters*, 357 N.C. at 101. The trial court instructed the jury multiple times that the attorneys' arguments were not evidence. The State argued based upon its theory of the case—that defendant was the aggressor. Apart from discussing the garden hoe for the first time in its closing argument, the inferences made were reasonable—given the admitted evidence of blunt force trauma to the decedent's head and the photos of defendant without any injury after the altercation. Therefore, the trial court did not abuse its discretion.

Defendant also argues the State made unreasonable inferences when it

discussed the downward direction of the stabbing to infer defendant's position as the attacker. Defendant argues this was not admitted into evidence. But our review of the record reveals the medical examiner report included discussion of the downward trajectory of the knife stabbing. The State's inference of this admitted evidence was reasonable and the trial court's overruling of this objection was in line with its duty to allow wide latitude to trial counsel. *See Craig*, 308 N.C. at 454–55. Accordingly, we conclude the trial court did not abuse its discretion by overruling defendant's objections to the State's closing remarks.

## III.

The trial court did not err by including the aggressor doctrine in the jury instructions. The trial court did not err by denying defendant's request for a mistrial over the State's statements made during its closing argument, and the trial court did not abuse its discretion by overruling defendant's objections to the State's closing remarks. For the foregoing reasons, we discern no error.

NO ERROR.

Judge GRIFFIN concurs.

Judge ARROWOOD concurs in result only.

Report per Rule 30(e).